[Crim. No. 8508. First Dist., Div. One. Feb. 5, 1971.]

THE PEOPLE, Plaintiff and Appellant, v.
NATHAN ELLIS, Defendant and Respondent.

**COUNSEL**

Thomas C. Lynch, Attorney General, Derald E. Granberg and Sanford Svetcov, Deputy Attorneys General, for Plaintiff and Appellant.

Edward T. Mancuso, Public Defender, Charles G. Warner, Ina Gyemant, Walter E. Frefts, Jr., Curtis L. Floyd and Frederick D. Smith, Deputy Public Defenders, for Defendant and Respondent.

**OPINION**

**ELKINGTON, J.**—This appeal by the People is taken from a superior court order setting aside (pursuant to Pen. Code, § 995) counts one, four, seven, and nine of a grand jury indictment returned against defendant Nathan Ellis. Each of the dismissed counts stated a charge of kidnaping for purpose of robbery, a violation of Penal Code section 209.

As relevant here Penal Code section 209 provides: "[A]ny person who kidnaps or carries away any individual to commit robbery, . . . is guilty of a felony. . . ."

The term "kidnaping" as used in Penal Code section 209, and as perti-

nent here, is defined by section 207 of the same code in this manner: "Every person who forcibly steals, takes, or arrests any person in this state, and carries him into another country, state, or county, or into another part of the same county, . . . is guilty of kidnaping." (See *People* v. *Daniels,* 71 Cal.2d 1119, 1126 [80 Cal.Rptr. 897, 459 P.2d 225].)

We have concluded that the superior court's order rests upon a misapplication of the rule announced in *People* v. *Daniels, supra,* and that the order must therefore be reversed. Our reasons follow.

*Daniels* (p. 1139) holds: "[T]hat the intent of the Legislature in amending Penal Code section 209 in 1951 was to exclude from its reach not only 'standstill' robberies . . . but also those in which the movements of the victim are merely incidental to the commission of the robbery and do not substantially increase the risk of harm over and above that necessarily present in the crime of robbery itself." Elsewhere the court, referring to the section 207 definition of kidnaping, stated (p. 1130): " '[T]he Legislature could not reasonably have intended that such *incidental* movement be a taking ". . . from one part of the county to another." ' "

The term "incidental" is ordinarily defined as "subordinate, nonessential, or attendant in position or significance. . . ." (Webster's New Internat. Dict. (3d ed.)); and as "Depending upon or appertaining to something else as primary" (Black's Law Dict. (4th Ed.)). But if this broad meaning be given the term "incidental" as used in *Daniels,* it must have the effect of nullifying section 209, for by definition a kidnaping for the purpose of robbery is subordinate, secondary and ancillary, and therefore *incidental,* to the intended crime.

In *Daniels* the court reversed three section 209 (kidnaping for the purpose of robbery) convictions. In that case on three occasions one or both of the defendants gained entrance to residential quarters occupied by a lone woman. In the course of ensuing robberies and rapes the victims, under compulsion, moved respective distances within their living areas of 18 feet, 5 or 6 feet, and 30 feet. The court pointed out (p. 1140): ". . . that the brief movements which defendants Daniels and Simmons compelled their victims to perform in furtherance of robbery were merely incidental to that crime and did not substantially increase the risk of harm otherwise present. Indeed, when in the course of a robbery a defendant does no more than move his victim around inside the premises in which he finds him—whether it be a residence, as here, or a place of business or other enclosure—his conduct generally will not be deemed to constitute the offense proscribed by section 209. Movement across a room or from one room to another, in short, cannot reasonably be found to be asportation 'into another part of the same county.' (Pen. Code, § 207.)"

A reading of *Daniels* will indicate no intent to emasculate the kidnaping for the purpose of robbery statute, but rather to prevent its application under inappropriate factual circumstances. Its holding will only be applied, the court indicated, where the asportative acts are "integral to other crimes and are not essentially kidnaping" (p. 1136), or where they " 'played no significant role in the crimes' " or where they occurred "as a subsidiary incident," or did not facilitate "the commission of a felony." (Pp. 1137-1138.) And the court expressed agreement with the drafters of the proposed Model Penal Code for the need to make "clear the purpose to preclude kidnaping convictions based on trivial changes of location having no bearing on the evil at hand." (P. 1138.)

In *Daniels* the court appears to have relied substantially on *People* v. *Levy,* 15 N.Y.2d 159 [256 N.Y.S.2d 793, 204 N.E.2d 842], and *People* v. *Lombardi,* 20 N.Y.2d 266 [282 N.Y.S.2d 519, 229 N.E.2d 206].

In *People* v. *Levy, supra,* as a couple were about to emerge from their automobile two men entered. One took control of the vehicle and drove aimlessly for a considerable distance around city streets while the other, in the back seat, robbed the victims. The men were convicted of kidnaping and other offenses. The appellate court reversed the kidnaping convictions, concluding that the car's movement in no way facilitated the robberies since they could as well have been committed in the parked car. The court said (p. 165): "In the case before us the movement of the automobile, which was itself the situs of the robbery, was not essentially different in relation to the robbery than would be the tying up of a victim in a bank and his movement into another room. In essence the crime remained a robbery although some of the kidnaping statutory language might literally also apply to it."

In *People* v. *Lombardi, supra,* 20 N.Y.2d 266, a pharmacist on each of several occasions drugged a girl and then drove her a considerable distance to a motel where he sexually molested her. The court, relying on *People* v. *Levy, supra,* reversed the kidnaping convictions which followed. The stated reasons were (pp. 270-271): "But the direction of the criminal law has been to limit the scope of the kidnaping statute, with its very substantially more severe penal consequences, to true kidnaping situations and not to apply it to crimes which are essentially robbery, rape or assault and in which some confinement or asportation occurs as a subsidiary incident. [¶] Asportation in the present case, for example, played no significant role in the crimes. Had defendant drugged his victims and taken them to a room in back of the pharmacy and there attempted to rape them or make sexual advances, the crimes would appear more clearly to be attempted rape or assault and essentially something other than

kidnaping. [¶] . . . One might suppose that taking his drugged victims in daylight to a public motel, thus inviting the possible risk of inquiry, was a less certain way of achieving his purpose than taking them somewhere on the pharmacy premises."

We advert to the holding of the *Daniels* court, stated *ante*, that " 'the Legislature could not reasonably have intended that such *incidental* movement be a taking ". . . from one part of the county to another." ' " (Italics added; p. 1131.) It becomes clear from a reading of *Daniels*, and the authority there relied upon, that the term "incidental" was used in the sense that the asportation play no significant or substantial part in the planned robbery, or that it be a more or less " 'trivial changes of location having no bearing on the evil at hand.' " (71 Cal.2d at p. 1138.)

It thus appears to be the rule of *Daniels* that where "the movements of the victim are merely incidental to the commission of the robbery [i.e., playing no significant or substantial part in the attempt to accomplish that crime], and do not substantially increase the risk of harm over and above that necessarily present in the crime of robbery itself" (see p. 1139), the strictures of Penal Code section 209 are not applicable.

Such appears to be the interpretation given *Daniels* by several *post Daniels* cases of the Courts of Appeal of this state.

In *People* v. *Ross,* 276 Cal.App.2d 729 [81 Cal.Rptr. 296] (hg. den.), four men were charged with kidnaping (Pen. Code, § 207), and robbery of a clothing store. The asportation of the victims consisted of ordering two employees to lie on the floor, and then requiring one of them to open a back door and return to his prone position. In this close factual counterpart of *Daniels* the Court of Appeal found that the asportation of the victims "was 'merely incidental to' the robbery and did not 'substantially increase' the potential for harm" to the victims, and reversed the kidnaping convictions.

In *People* v. *Ramirez,* 2 Cal.App.3d 345 [82 Cal.Rptr. 665] (hg. den.), the victim was pulled from her automobile and thrown by two men into the back seat of another car. As the car drove off the men clearly indicated by words and acts an intent to rape the girl; they were, however, intercepted by police before they could accomplish their purpose. One of the men, Ramirez, was later found guilty of kidnaping (Pen. Code, § 207), attempted rape, and assault with intent to commit rape. The Court of Appeal sustained the kidnaping conviction. *Daniels* was interpreted as holding (p. 354) that a person is guilty of kidnaping if he unlawfully removes another a substantial distance from where he is found for the purpose "of facilitating the commission of a felony."

*People* v. *Thomas,* 3 Cal.App.3d 859 [83 Cal.Rptr. 879] (hg. den.), concerned a case where the accused, displaying a gun, accosted two girls at night on a well traveled and lighted street. He forced them to the darkened end of a nearby alley where he robbed one victim and attempted the robbery of the other. Thereafter he was convicted of two counts of kidnaping for the purpose of robbery. (Pen. Code, § 209.) The convictions were affirmed on appeal, the court stating (p. 866): "In the case before us the girls were stopped around midnight by Thomas on a 'well lit' public street. They were forced to enter a nearby intersecting and dimly lighted alley. It was in the darkened part of the alley that the robbery of Susan and the attempted robbery of Kathryn took place. This factual situation differs substantially from those of the three cases of *Daniels.* Here the obvious purpose of Thomas was to get the girls quickly away from the lighted street on which the appearance of pedestrians or motorists could reasonably be expected at any moment. The asportation of the victims to the interior of the darkened alley enabled him to accomplish his purpose of robbery with much less probability of apprehension. The 'risk of harm [was] over and above that necessarily present in the crime of robbery itself'—the girls were forced into a place where the probability of rescue was lessened, and the likelihood of violence against them heightened since Thomas could reasonably believe it would go undetected. We consider such conduct to constitute 'kidnaping to commit robbery' as defined and proscribed by Penal Code sections 207, 209, and as clarified by *People* v. *Daniels, supra,* 71 Cal.2d 1119."

In *People* v. *Schafer,* 4 Cal.App.3d 554 [84 Cal.Rptr. 464] (hg. den.), the accused was convicted of Penal Code section 207 kidnapings and rapes. A girl had accepted a ride in his automobile. "[T]he unconsented-to movement started at the point when defendant turned off the road to an area which looked like a parking lot" (p. 561) where a rape was perpetrated. On another occasion *he* was picked up by a girl in a car. There (at p. 560) "the unconsented-to movement was from the traffic light where she thought defendant wanted to be let off to a spot just a short distance forward, partially on the shoulder" of the same road. The Court of Appeal reversed under the authority of *Daniels,* concluding (p. 561) that " ' "the Legislature could not reasonably have intended that such incidental movements be a taking '. . . from one part of the county to another.' " ' "

We note that the court in *People* v. *Schafer, supra,* by way of dictum stated (p. 560): "It is clear from the record that the movements of [the girls] were *solely to facilitate the commission of the rapes,"* thus implying contrary to *Daniels,* that such a purpose also precluded a kidnaping conviction. (Italics added.) Such, we think, is clearly not the law. If it were,

it would operate as a grant of immunity from the kidnaping law to one whose asportative acts, regardless of their substantiality, or the distance or time involved, were solely for the purpose of rape or some other felony —while one whose asportative acts were purposeless and otherwise without felonious or other criminal intent would be guilty of kidnaping, punishable by a maximum of 25 years' imprisonment. (See Pen. Code, §§ 207, 208.)

In the recent case of *People* v. *Shirley,* 10 Cal.App.3d 268 [88 Cal. Rptr. 853], by force and threats a girl was "asported" by defendants within an apartment and also for considerable distance over city streets. Their purpose was "to compel a promise to prostitute." They were thereafter charged with kidnaping (Pen. Code, § 207), pandering, a felony (Pen. Code, § 266i), and aggravated assault (Pen. Code, § 245). The Court of Appeal affirmed the kidnaping conviction, relying in great part upon the persuasiveness of section 135.25 of the proposed Model Penal Code (which in turn had been cited with approval by the *Daniels* court), as follows (p. 272): "A person is guilty of aggravated kidnaping when he thus 'abducts' another person and when (1) his intent is to demand ransom, or (2) he restrains the victim for more than 12 hours with intent to terrorize the victim or *to facilitate the commission of a felony. . . .*" (Italics added.)

█ We now apply the rule of *Daniels* to the facts of the case before us.

Count One: A young lady entering the street door of her apartment house was accosted by two men armed with knives who demanded that she take them to her upstairs apartment. She followed orders, taking the men to her living quarters where upon closing the door they proceeded to take money and property from her person and from the premises.

Count Four: Two days later another girl walking up the outside steps of her apartment building, was confronted by the same men, one armed with a knife and the other with a gun. They told her that they wanted to go to her apartment which was two and one-half flights upstairs. Upstairs, among other crimes, they took property from the girl's person and apartment.

Count Seven: On the same evening another girl emerged from her car and walked toward her apartment house. Outside the street door a man armed with a knife came up to her demanding that she take him to her apartment and show him her valuables. A second man then appeared and the three entered the apartment house door and started for the apartment. At the next floor level the victim started screaming loudly. After unsuccess-

fully trying to stop her by choking and hastily trying to remove her ring the men fled.

Count Nine: About two weeks later two men confronted a woman as she stepped out of an automobile. Her money was taken, after which one of the men said, "Let's go up to your place and see what there is worth taking." Under threats she took them to her apartment which was ransacked by the men, who in addition to other crimes, stole more money and property.

Defendant Nathan Ellis was identified by each of the victims as one of the robbers. As previously indicated he was charged, along with other crimes, with four counts of kidnaping for the purpose of robbery. (Pen. Code, § 209.) Thereafter Ellis, relying on *People* v. *Daniels, supra,* 71 Cal.2d 1119, moved, as permitted by Penal Code section 995, to dismiss the four charges of aggravated kidnaping. The motion was granted, resulting in the instant appeal by the People.

Here, in each case, the intent of Ellis and his companion, among other things, was to rob their victim of valuable property which they hoped to, and in three of the cases did, find in her apartment. The asportation of the girls from the street to their upstairs apartments was *essential* to the accomplishment of the criminal purpose. Adopting language used by the *Daniels* court, the movement of the victims did play a "significant role in the crimes of robbery" and certainly did "facilitate the commission of a felony." Here it cannot reasonably be said that the girls' asportations were inconsequential or "trivial changes of location having no bearing on the evil at hand."

Furthermore, the asportation of the female victims from the public street to their confined upstairs apartments fulfilled the second requirement of *Daniels;* such movement did "substantially increase the risk of harm over and above that necessarily present in the crime of robbery itself." (71 Cal.2d at p. 1139.) On the street violence must necessarily be kept to a minimum because of the obvious risk of discovery and apprehension. But in the girls' closed apartments the men would need have little fear of being hindered in their criminal plans, which here also included sexual and other violent assaults on their victims.

■ There is no merit to the contention that whether a kidnaping occurred depends on the *distance* covered by the asportation. The test is whether the asportation was *substantial* which in turn depends upon the circumstances of the case. (See *Daniels,* pp. 1131 (fn. 5), 1138 (fn. 11), and 1138-1139.) Obviously a heinous kidnaping might occur in the seizure of a victim and his forcible detention unknown to family or friends in the

house next door but a few feet away. On the other hand, as in *People v. Levy, supra,* 15 N.Y.2d 159, where a robbery could as readily have been committed in a parked car, its purposeless movement for several miles while the robbery took place was properly held not to be a *substantial* asportation.

In the circumstances of the instant case we hold that it may not be said, as a matter of law: (1) that the asportation of Ellis' victims was not substantial, or (2) that it did not facilitate the commission of the upstairs robberies, or as with count seven tend to facilitate such criminal purpose, or (3) that the probability of harm to the victims was not substantially increased thereby.

It follows that the determination of the grand jury that there was reasonable and probable cause to believe Ellis guilty of the kidnaping for purpose of robbery charges must be respected and upheld. (See *Lorenson v. Superior Court,* 35 Cal.2d 49, 56-57 [216 P.2d 859]; *People v. Beasley,* 250 Cal.App.2d 71, 77-78 [58 Cal.Rptr. 485].)

The order dismissing counts one, four, seven and nine of the indictment is reversed.

Molinari, P. J., and Sims, J., concurred.