[Crim. No. 8264. First Dist., Div. One. Apr. 23, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
DANIEL THOMAS STATHOS et al., Defendants and Appellants.

## Counsel

Harold D. Messner, under appointment by the Court of Appeal, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Timothy A. Reardon, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**ELKINGTON, J.**—Following a trial by jury defendant Daniel Thomas Stathos was convicted of kidnaping for the purpose of robbery (Pen. Code, § 209) and two counts of first degree robbery (Pen. Code, §§ 211, 211a). His codefendant Kenneth Lee Harnal, tried at the same time, was convicted of kidnaping for the purpose of robbery and first degree robbery. (An accomplice in the offenses, Walter Hoefler, pleaded guilty without

a trial.) Each defendant has appealed from the judgment which was entered against him on the jury's verdict.

Both *Stathos* and *Harnal* contend that the convictions of kidnaping for the purpose of robbery were contrary to law and unsupported by substantial evidence.

The following evidence was introduced at the trial. Luciano Sabella was the owner of a Marin County restaurant. Around 10:30 p.m. on November 24, 1968, he answered the doorbell at his home. He was confronted by Walter Hoefler who, producing a gun, said "Don't do anything stupid or else I will kill you." Hoefler then walked in followed by Stathos. Later Harnall joined the two men in the house. Sabella was told by Hoefler that he would be taken to his restaurant "to open the safe and take money from there." Around 12:30 a.m. Sabella was taken by Hoefler and Harnal to the restaurant in Sabella's automobile. Stathos remained behind with Sabella's children and his wife who was handcuffed to a piano. The three men had prearranged a plan that when the money was obtained from the restaurant safe Sabella would telephone the house, let the telephone bell ring twice, and then hang up. "This would signal [Stathos] that everything is all right at the house and he would depart from the house and no one would be harmed."

Arriving at the restaurant Sabella opened the safe. Hoefler placed its contents in a bag. Sabella then telephoned his home letting the bell ring twice and then hung up. He was then driven to some point where Hoefler and Harnal got out of Sabella's car and into another. Sabella had been admonished: "Don't call the police, don't stop, get directly to your house because remember that your wife is still there." He went home and saw that "she was all right. . . . I went to the kitchen and got the keys to the handcuffs that were left on the table as they told me, and I released her." Stathos in the meantime had departed.

Neither defendant contends that the foregoing facts were not established by substantial evidence. Instead the contention seems to be that, assuming their truth, a kidnaping for the purpose of robbery as proscribed by Penal Code section 209 was not made out. They rely on the case of *People v. Daniels,* 71 Cal.2d 1119 [80 Cal.Rptr. 897, 459 P.2d 225]. On a petition for rehearing, which we granted, they placed further reliance on a series of decisions of our Supreme Court, filed March 24, 1971, i.e., *People v. Mutch,* 4 Cal.3d 389 [93 Cal.Rptr. 721, 482 P.2d 633]; *People v. Timmons,* 4 Cal.3d 411 [93 Cal.Rptr. 736, 482 P.2d 648]; *People v. Adame,* 4 Cal.3d 417 [93 Cal.Rptr. 740, 482 P.2d 652]; *People v. Ungrad,* 4 Cal.3d 420 [93 Cal.Rptr. 741, 482 P.2d 653]; *People v. Killean,* 4 Cal.3d 423 [93 Cal.Rptr. 742, 482 P.2d 654]; *People v. Smith,* 4 Cal.3d 426

[93 Cal.Rptr. 743, 482 P.2d 655]; *People* v. *Adams,* 4 Cal.3d 429 [93 Cal.Rptr. 745, 482 P.2d 657]; *People* v. *Hunter,* 4 Cal.3d 432 [93 Cal. Rptr. 746, 482 P.2d 658]; *People* v. *Coleman,* 4 Cal.3d 436 [93 Cal.Rptr. 748, 482 P.2d 660]; *People* v. *Norman,* 4 Cal.3d 439 [93 Cal.Rptr. 749, 482 P.2d 661]; *People* v. *Morrison,* 4 Cal.3d 442 [93 Cal.Rptr. 751, 482 P.2d 663].

■ Specifically it is contended that without conflict, and as a matter of law, the evidence discloses "that the movement of Sabella was incidental to the robbery and did not increase the risk of harm." Under *Daniels* and its recent satellite cases, it is argued, a Penal Code section 209 kidnaping for robbery therefore does not appear.

Defendants misconstrue the rule of *Daniels.*

In *Daniels,* and in each of its progeny, the victims were asported by the robbers a short distance, usually a few feet, within the area which was the robbery situs.[1] In each it was held that a Penal Code section 209 "kidnaping for robbery" as a matter of law was not established by the evidence.

The Supreme Court was concerned with the rapidly growing practice of the " 'distortion of lesser crimes into a much more serious crime by excess of prosecutorial zeal.' . . ." (*Daniels,* p. 1137, fn. 10.) It approved language of the draftsmen of the Model Code to the effect: "Examples of abusive prosecution for kidnapping are common. Among the worst is use of this means to secure a death sentence or life imprisonment for behavior

---

[1]In *Daniels,* three victims were forced to move respective distances of 18 feet, 5 or 6 feet, and 30 feet about their dwellings; in *Timmons,* discussed *post,* an automobile which traveled 5 city blocks was found to be "the moving situs of the robbery" of its two occupants; the *Mutch* victims were compelled to crawl 30-40 feet into an adjacent room where a safe was located; in *Adame* supermarket employees were caused to move from the checkout counter to the manager's office; *Ungrad* concerned three persons who were obliged to move to various rooms in search of valuables; in *Killean* two victims were forced to move "across the threshold" and through various rooms of their apartment; in *Smith* robbers caused a clerk to move about a hotel office and to a second floor room, and a bellboy to move across a room; in *Adams* the robbery victims were forced to lie on the floor and to move about a room and a rear storage area; *Hunter's* situs was a private residence where three persons were moved through various rooms; in *Coleman* a retired dentist was forced through various rooms in a search for money; the *Norman* victims were caused to move across a living room into a bedroom; *Morrison* concerned a private home whose occupants were moved up and down stairs and into various rooms.

In yet another "kidnaping-robbery" case, *People* v. *Williams,* 2 Cal.3d 894 [88 Cal. Rptr. 208, 471 P.2d 1008], the Supreme Court considered a service station robbery victim's movement within the station, and "down the street" at the conclusion of the robbery under compulsion of an order to do so, thus facilitating the robber's escape. The trial court had reduced a jury's "kidnaping for robbery" (Pen. Code, § 209) verdict to "simple" kidnaping (Pen. Code, § 207). The Supreme Court, as a matter of law, found no kidnaping.

that amounts in substance to robbery or rape, . . ." (*Daniels, supra,* 71 Cal.2d at p. 1138.) And the court spoke of the " 'absurdity of prosecuting for kidnaping in cases where the victim is forced into his own home to open the safe, or to the back of his store in the course of a robbery. . . .' " (P. 1138.)

Applying this reasoning to the facts of the case before it—movements within a home of from 5 to 30 feet—the *Daniels* court found a legislative intent that such minimal asportation did not constitute "kidnaping" under Penal Code section 209. The court stated (p. 1139): "[We] hold that the intent of the Legislature in amending Penal Code section 209 in 1951 was to exclude from its reach not only 'standstill' robberies (e.g., *People v. Knowles* (1950) . . . 35 Cal.2d 175 [217 P.2d 1]) but also those in which the movements of the victim are merely incidental to the commission of the robbery and do not substantially increase the risk of harm over and above that necessarily present in the crime of robbery itself. (See Note, *Room-to-Room Movement: A Risk Rationale for Aggravated Kidnaping* (1959) 11 Stan.L.Rev. 554, 555; Note, *A Rationale of the Law of Kidnapping,* 1953 Colum.L.Rev. 540, 554-557.)"

The above holding has since been spoken of (see *People v. Timmons, supra,* 4 Cal.3d 411, 414) as the *"Daniels test"* for the nonapplication of section 209, the "two branches" of which exist where (1) the movements of the victim are merely incidental to the commission of the robbery, and (2) they "do not substantially increase the risk of harm over and above that necessarily present in the crime of robbery itself." Where both of the "branches" appear there can be no "kidnaping for robbery" as denounced by Penal Code section 209.

As noted, defendants first contend that their asportation of Sabella from his home to his place of business was but "incidental" to the robbery.

The word "incidental" is defined as "subordinate, nonessential, or attendant in position or significance"—"occurring merely by chance or without intention or calculation. . . ." (Webster's Third New Internat. Dict.; see also *People v. Williams, supra,* 2 Cal.3d 894, 902, fn. 2.)

The Supreme Court has repeatedly emphasized that, in the *Daniels* context, it gives the word a similar meaning. It has consistently qualified its use of the term "incidental" by the adverb "merely." (See *People v. Daniels, supra,* 71 Cal.2d 1119, 1139; *People v. Williams, supra,* 2 Cal.3d 894, 901; *People v. Mutch, supra,* 4 Cal.3d 389, 395.) In *Daniels,* describing its intended meaning, it used or adopted such expressions as, movements which " 'were those *natural in'* " the crime involved (p. 1130), "brief movements" (p. 1130), " 'mere movement of the victim of a crime

should not inevitably lead to the criminal's being indicted for kidnapping' " (p. 1132), " '[i]t is difficult to conceive a situation in which the victim of a robbery does not make some movement under the duress occasioned by force or fear' " (p. 1134), "[i]t is a common occurrence in robbery, for example, that the victim be . . . *moved into and left in another room or place*" (p. 1135), a true kidnaping situation does not exist where the asportation " 'played no significant role in the crimes' " (p. 1137), and " 'trivial changes of location having no bearing on the evil at hand.' " (P. 1138.)

In the case at bench Sabella was transported across Marin County for a substantial distance and was held for a considerable period of time. The asportation was not merely incidental. It was an important, even necessary, part of the criminal project, for without it there could be no robbery, at least in the manner planned by defendants. The first branch of the *Daniels* test for nonapplication of Penal Code section 209—that the asportation be *merely incidental* to the robbery—is not established.

Although not necessary to our conclusion, since an asportation *not* merely incidental to a robbery will not defeat a section 209 charge, we nevertheless inquire whether the *Daniels* test's second branch is applicable here.

Reference to the authority upon which *Daniels* predicated the second branch of its test makes clear that the court was concerned with something more than the threat of danger attending any robbery. It was recognized that a kidnap victim's peril ordinarily grows with the passage of time and distance. In the first authority relied upon (11 Stan.L.Rev. 554, 555) it is stated: "Section 209 literally includes any movement of the victim for the purpose of robbery, . . . Risk-aggravating factors would seem to arise only where continuous forcible control is maintained, and becomes so protracted that the actor may be unwilling to await compliance or to release the victim unharmed even upon compliance. Accordingly, the statute's coverage of robbery . . . should be limited to situations where the movement or detention to achieve those ends is so extended as to create in itself a risk greater than that inhering in the mere commission of such offenses, which are separately punishable under the code."

The remaining authority (1953 Colum.L.Rev. 540, 554) asserts: "The conduct made criminal by the law of kidnapping and related offenses results, or is likely to result, in one or more of a variety of harmful consequences. Since a detention or asportation of the victim is frequently accompanied by the use of force, the first and most obvious is that death or bodily injury may result. . . ."

It follows that the second branch of the test—that the asportation not substantially increase the risk of harm over and above that necessarily present in the crime itself—also has not been met. Sabella's protracted asportation was clearly such as "to create in itself a risk greater than that inhering in the mere commission" of the robbery.

*People* v. *Timmons, supra,* 4 Cal.3d 411, extends no aid to defendant's argument. There, supermarket employees returning from a bank drove into their employer's parking lot with a large amount of money. As they were parking, Timmons shouted "This is a holdup," got into the car and directed the driver to pull out and turn to the right. The driver complied. While driving down the street Timmons asked for the money which was handed to him. The driver was then directed to park at a fire hydrant at which point Timmons emerged from the car. About five city blocks were covered, and but a short time was taken, in the asportation. And obviously, the consummation of the robbery in no way depended upon the car's movement; the money could as readily have been taken from the car in the parking lot.

The court said, "[The victims] simply drove their own car for some five blocks along a city street in broad daylight, while Timmons accomplished the robbery . . . ." The court considered the victim's car, in which the money was located, to be the "moving situs of the robbery," thus likening it to the homes of the *Daniels* victims in which the robbery loot was found. The asportative movement was found to be insubstantial, "brief," and but "incidental" to the robbery. And the court, pointing out the obvious, said that the movement did not "substantially increase the risk of harm" to the robbery victims that would ordinarily attend a true "kidnaping for robbery."

We hold that defendants' convictions of kidnaping for robbery, as proscribed by Penal Code section 209, are supported by substantial evidence and are otherwise not contrary to law.

■ Defendants' next contention is that the prosecutor was guilty of misconduct throughout his argument to the jury.

It is true that on several occasions the prosecutor's remarks were attended by excessive and misdirected zeal. But it appears that any slight prejudice resulting to defendants from his argument could have been obviated by a timely and appropriate jury admonition by the court. At no time was such an admonition requested, and in greater part neither was objection made. Furthermore, the evidence of defendants' guilt was strong. It is improbable that the questioned remarks affected the trial's outcome. Accordingly, such a claim of misconduct will not now be considered on

appeal. (See *People* v. *Rodriguez,* 10 Cal.App.3d 18, 35 [88 Cal.Rptr. 789].)

■ Defendant Harnal alone contends that the trial court's refusal to grant him a separate trial was error.

Harnal was charged with and convicted only of the offenses relating to Luciano Sabella. Stathos was also charged with and convicted of the robbery of a bowling alley, in the course of which the contents of a safe were taken. Substantial evidence indicated that the bowling alley offense was committed by Stathos and Hoefler. As we have indicated the offenses against Sabella were committed by Stathos, Harnal and Hoefler. Additionally, the evidence disclosed that the same gun was used by Stathos in each of the criminal projects.

■ It appears to be settled law that dual defendants may be tried together where their several offenses have "a common element of substantial importance in their commission." This rule applies even though one defendant is charged with fewer crimes than the other. (See *People* v. *Spates,* 53 Cal.2d 33, 36 [346 P.2d 5]; *People* v. *Chapman,* 52 Cal.2d 95, 97 [338 P.2d 428].) *People* v. *Pike,* 58 Cal.2d 70, 84-85 [22 Cal.Rptr. 664, 372 P.2d 656], holds that the use of the same gun in several crimes is " 'a common element of substantial importance' " in their commission. ■ And it would seem to reasonably follow that one person, here Hoefler, participating in all of the charged offenses, would also be such a "common element." No reason otherwise appears for us to hold that the trial court abused its discretion in denying the severance. The ruling will therefore not be disturbed. (See *People* v. *Willingham,* 271 Cal.App.2d 562, 575 [76 Cal.Rptr. 760].)

■ The final contention is that of defendant Stathos alone. He represented himself at the trial. It is urged that his right to counsel was neither intelligently, nor competently, nor voluntarily waived.

On the fourth day of the trial Stathos moved the court to dismiss his retained attorney and to allow him to represent himself throughout the remainder of the trial. The trial court with the aid of the district attorney conducted a thorough inquiry over an extended period of time as to Stathos' ability to represent himself. Among other things it appeared therefrom that Stathos had an above average intelligence quotient ("over a hundred") and had successfully completed high school and two semesters of college. He was familiar with the charges against him, understood the possible penalties, and had discussed the case at "great lengths" with his attorney. Our reading of the record persuades us that it could reasonably be concluded that Stathos, as required by *People* v. *Floyd,* 1 Cal.3d 694,

703 [83 Cal.Rptr. 608, 464 P.2d 64], had "an intelligent conception of the consequences of his act" and understood "the nature of the offense, the available pleas and defenses, and the possible punishments."

Upon conclusion of the inquiry the trial court stated: "I will certainly make a finding that this man is fully competent and capable; understands his problems. Now, he doesn't have the skills or training that would come from having practiced law, but he certainly is intelligent, knows what he is doing."

■ A defendant in a criminal case has the constitutional right to waive counsel and represent himself if he knowingly and intelligently elects to do so. Absent a showing of an abuse of discretion the trial court's determination that such a waiver is knowing and intelligent will not be disturbed. (*People* v. *Floyd, supra,* 1 Cal.3d 694, 702; *People* v. *Maddox,* 67 Cal.2d 647, 651 [63 Cal.Rptr. 371, 433 P.2d 163].) ■ We see no abuse of discretion here.

Both judgments must be affirmed.

The judgments are affirmed.

Molinari, P. J., and Sims, J., concurred.

A petition for a rehearing was denied May 18, 1971.