[Crim. No. 20055. Second Dist., Div. Two. Sept. 7, 1971.]

In re GLENN RUSSELL BRYANT on Habeas Corpus.

### COUNSEL

Glenn Russell Bryant, in pro. per., and Thomas S. Brigham for Petitioner.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Russell Iungerich, Deputy Attorney General, for Respondent.

### OPINION

**HERNDON, J.**—Petition for writ of habeas corpus.

The above entitled proceeding previously pending in the Court of Appeal, Third District, was transferred to this court by order of the Supreme Court dated April 26, 1971.

In February of 1965, petitioner was convicted on count II of an information charging robbery (Pen. Code, § 211), and on four counts of kidnaping for the purpose of robbery (Pen. Code, § 209). The named victim of the robbery was one Copeland. Each of the four kidnaping counts alleged a different victim identified as follows: Count I—Beard; count III—Copeland; count IV—Gulsrud; and count V—Hawkins.

As indicated, petitioner was found guilty on all five counts as charged. The allegations that petitioner was armed with a deadly weapon were found to be true and the robbery was found to be of the first degree. Petitioner was sentenced to state prison on count III for the kidnaping of Copeland for the purpose of robbery, and on all the remaining counts the imposition of sentence was suspended.

The record reveals that the transaction involved was a daylight armed robbery of a J. C. Penney store located in Santa Monica. The victim Beard arrived on the premises first, was taken upstairs and tied up. Copeland then arrived, was taken upstairs and forced to open the safe and then tied up. Gulsrud and Hawkins arrived later and likewise were tied up.

After the money had been put in bags, petitioner cut Copeland loose and told him, "You are coming with me." The rest of the employees were told Copeland would be killed if anybody called the police within 15 minutes. The following events then occurred:

Petitioner told Mr. Copeland to go ahead of him down the stairs. When they had reached the main floor, petitioner picked up the zippered bags containing the money and gave one to Mr. Copeland to carry. They then left the store and walked a distance of about one block to where Mr. Copeland's Volkswagen was parked on Third Street, just north of California. At petitioner's direction, Mr. Copeland got into his car and opened the passenger door for appellant. Petitioner told Mr. Copeland to put the bag he was carrying on the floor behind the driver's seat. Petitioner then put the other bag on the floor in the front seat and got into the car.

Following petitioner's directions, Mr. Copeland drove the car. The route taken was north on Third to Montana, east on Montana to Fourth, north on Fourth to Adelaide, east on Adelaide to Seventh, and north on Seventh to where it intersects with Pacific Coast Highway and Chautauqua. Petitioner then told him to turn right and Mr. Copeland did so and proceeded up Chautauqua. However, petitioner then said, "No, I mean that street," referring to Pacific Coast Highway. When asked if he wanted to turn around, petitioner said, "Keep going." After driving a short distance on Chautauqua, petitioner told Mr. Copeland to pull over to the curb and get out. After Mr. Copeland had gotten out of the Volkswagen, petitioner

slid into the driver's seat and then proceeded along up Chautauqua until he was out of Mr. Copeland's sight.

Relying upon the recent decisions of the Supreme Court in *People* v. *Mutch,* 4 Cal.3d 389 [93 Cal.Rptr. 721, 482 P.2d 633], and more particularly *People* v. *Timmons,* 4 Cal.3d 411 [93 Cal.Rptr. 736, 482 P.2d 648], the petitioner argues that his convictions on the four counts of kidnaping for the purpose of robbery should be vacated for the reason that the movements of the victims were purely incidental to the crime of robbery.

It is our conclusion that the cited cases support petitioner's position with respect to the kidnapings charged in counts I, IV and V, but that the movement of Copeland was such as to support petitioner's conviction of kidnaping of Copeland for the purpose of robbery as charged in count III. *People* v. *Timmons, supra,* is clearly distinguishable on the facts. In that case the vehicle in which the victims were robbed could properly be referred to as "the moving situs of the robbery."

In the instant case, however, Copeland was removed from the store, forced into his automobile and compelled to drive a circuitous route of some two to three miles before being cast out of his automobile. Copeland's abduction, accompanied by petitioner's threat to kill him if the police were called, substantially increased the risk of harm to him far beyond that inherent in the crime of robbery. (*People* v. *Timmons, supra,* 4 Cal.3d at p. 415; *People* v. *Ellis,* 15 Cal.App.3d 66 [92 Cal.Rptr. 907]; *People* v. *Stathos,* 17 Cal.App.3d 33 [94 Cal.Rptr. 482], and decisions therein cited.) Furthermore, such abduction to prevent the apprehension of the robber necessarily involves the additional inherent risks incident to pursuit and escape. (Cf. *People* v. *Ramirez,* 2 Cal.App.3d 345, 356 [82 Cal. Rptr. 665].)

Petitioner has argued that where a kidnaping occurs after an otherwise completed robbery, the case is removed from the coverage of Penal Code section 209. This argument is fallacious. As stated in *People* v. *Carroll,* 1 Cal.3d 581, at page 585 [83 Cal.Rptr. 176, 463 P.2d 400]: "It is settled that the crime of robbery is not confined to the act of taking property from victims. The nature of the crime is such that a robber's escape with his loot is just as important to the execution of the crime as obtaining possession of the loot in the first place. Thus, the crime of robbery is not complete until the robber has won his way to a place of temporary safety. [Citations.]"

It was held that the shooting of the victim in *Carroll* occurred "in the course of commission of the robbery." Likewise in the case at bench the asportation of the victim (for a distance of several miles under

compulsion of threats to kill him and subjecting him to risks of fatal injury far greater than those normally incident to a robbery) occurred "in the course of commission of the robbery." Manifestly, appellant entertained the intent to commit robbery continuously from the moment he entered the J. C. Penney store until he and his confederates reached their "place of temporary safety" in Pacific Palisades. (Cf. *People* v. *Tribble,* 4 Cal.3d 826 [94 Cal.Rptr. 613, 484 P.2d 589].)

■ Petitioner's contention that double punishment was illegally imposed upon him (Pen. Code, § 654) is equally unfounded. The trial court stayed the sentence on the robbery count and thereby eliminated any claim of double punishment. (*People* v. *Lynch,* 14 Cal.App.3d 602, 605 [92 Cal.Rptr. 411].)

Accordingly, it is ordered that our remittitur in case No. 10988, *People* v. *Bryant,* is recalled, and the convictions on counts I, IV and V are vacated. In all other respects the judgment is affirmed. Except to the extent indicated, the petition is denied.

Fleming, J., concurred.

**ROTH, P. J.**—I concur in the order of the court but am not content to rest my agreement upon the ground emphasized by the majority that "Copeland's abduction, accompanied by petitioner's threat to kill him if the police were called, substantially increased the risk of harm to him far beyond that inherent in the crime of robbery. (*People* v. *Timmons, supra,* 4 Cal.3d at p. 415; *People* v. *Ellis,* 15 Cal.App.3d 66 [92 Cal.Rptr. 907]; *People* v. *Stathos,* 17 Cal.App.3d 33 [94 Cal.Rptr. 482], and decisions therein cited.)"

The facts show as the majority state that "Manifestly, appellant entertained the intent to commit robbery continuously from the moment he entered the J. C. Penney store until he and his confederates reached their 'place of temporary safety' in Pacific Palisades. (Cf. *People* v. *Tribble,* 4 Cal.3d 826 [94 Cal.Rptr. 613, 484 P.2d 589].)"

Thus, the "abduction" at bench was not an *incidental* part of the crime. The facts at bench demonstrate as they did in *Stathos* (p. 39), that asportation was an integral, ". . . even necessary, part of the criminal project, for without it there could be no robbery, at least in the manner planned. . . ." (Cf. *People* v. *Carroll,* 1 Cal.3d 581, 585 [83 Cal.Rptr. 176, 463 P.2d 400].)

At bench, too, the evidence shows that Copeland's person was held by appellant and the other victims were told Copeland would be held until

the ransom of 15 minutes time had been paid. The movement (kidnaping) was "for ransom" in the sense of Penal Code section 209, although the ransom demanded was time and not currency.

Applicability of *People* v. *Daniels,* 71 Cal.2d 1119 [80 Cal.Rptr. 897, 459 P.2d 225] is governed by a two-pronged test. First, the movement must be merely *incidental* to the commission of the robbery or it must substantially increase the risk of harm inherent in the underlying crime. Thus, the first test of *Daniels* is not met at bench as it was not met in *Stathos.*

*Daniels* has no application at bench because the movement was an inherent part and not *incidental* to a planned robbery or, alternatively, because a separate crime of kidnaping for payment of ransom is made to appear.

I am not persuaded that the asportation at bench "substantially increased the risk of harm . . ." within the meaning of *People* v. *Timmons,* 4 Cal.3d 411 [93 Cal.Rptr. 736, 482 P.2d 648]. At bench the movement was short in time and distance. Moreover, as we know since the express disapproval of *People* v. *Thomas,* 3 Cal.App.3d 859 [83 Cal.Rptr. 879], in *Timmons, supra* (p. 414, fn. 1), it is not the *likelihood* of the use of violence always inherent in the underlying crime of armed robbery, nor the removal to a place where the chance of rescue is lessened which satisfies the *second* test of *Daniels.* There must be a risk of harm "over and above" that which is inherent in every armed robbery. A short movement for a short period of time may have increased the risk of harm "in some slight degree" but such is not enough; the movement has to increase the risk of harm *substantially.* (*People* v. *Timmons, supra,* at p. 416.) It is instructive to compare the lack of actual injury suffered by Mr. Copeland to the brutal pistol-whipping inflicted on the victims in *People* v. *Mutch,* 4 Cal.3d 389, 398 [93 Cal.Rptr. 721, 482 P.2d 633], which our Supreme Court opined to be ". . . unfortunately, a risk inherent in the crime of armed robbery . . ." and thus caused that court to subject the movement accompanying those vicious assaults to the *Daniels* decision.

In brief, distance traveled does not per se substantially increase the risk of bodily harm as is demonstrated by the facts of *Mutch* where the movement was incidental and the physical harm substantial and the facts at bench, wherein the asportation was much more substantial in time and distance—and the actual physical injury none.

The majority gives no reason for its conclusion other than a statement of the facts that the asportation here involved substantially increased the risk of harm to Mr. Copeland. In my opinion, it can be creditably

argued from those facts that the asportation calculated as a part of the robbery here perpetrated actually decreased the risk of any harm to Copeland and the other victims.

The order should stand for the reason, if no other, that the movement here involved was not merely incidental to the crime (the first *Daniels* test).

A petition for a rehearing was denied September 24, 1971, and petitioner's application for a hearing by the Supreme Court was denied November 18, 1971.