[Crim. No. 18298. Second Dist., Div. Five. May 19, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
LIDWINA APO et al., Defendants and Appellants.

**COUNSEL**

Richard H. Levin, under appointment by the Court of Appeal, for Defendants and Appellants.

Evelle J. Younger, Attorney General, Herbert L. Ashby, Chief Assistant Attorney General, William E. James, Assistant Attorney General, Norman H. Sokolow and Howard J. Schwab, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**COLE, J.**[*]—Nineteen defendants appeal from various judgments of conviction arising out of incidents taking place on the campus of San Fernando Valley State College on November 4, 1968.[1] Initially, 28 defendants were charged in count 1 with conspiracy to violate section 207 (kidnaping) and sections 236 and 237 (false imprisonment) of the Penal Code all in violation of section 182, subdivision 1 of that code. In counts 2 through 35, inclusive, all of the defendants were charged with kidnaping, each of these counts referring to a different victim. In counts 36 through 72, each of these defendants was charged with the crime of false imprisonment, each count likewise relating to a different victim. Counts 73 and 74 charged violations of another Penal Code section against appellant Dancer. The substance of these counts is not directly relevant to this appeal. Count 75 charged a misdemeanor assault as to which the defendant involved was acquitted. The nonappealing defendants either were acquitted, dismissed from the action or in one case did not appeal from the judgment of conviction.

Thirteen of the appellants were convicted of the conspiracy charged in count 1 and of three counts of kidnaping and twenty-nine counts of false

---

[*]Assigned by the Chairman of the Judicial Council.

[1]As indicated, the events in question all occurred on November 4, 1968. An indictment was returned on December 20, 1968. The transcript of the grand jury proceedings occupies 921 pages. The action was tried before the court sitting without a jury. The trial commenced on September 18, 1969; the court rendered its decision two months later on November 18, 1969. Sentences were imposed on January 28, 1970, and notices of appeal were immediately filed by the appealing defendants.

In July 1970, appellants requested the appointment of specific counsel to represent them on these appeals and orders appointing such counsel were made that month. Thereafter, three requests for extensions of time to file the appellants' opening brief were made by the counsel thus appointed. Numerous times thereafter clerks of this court inquired or tried to inquire of counsel as to when the opening brief would be filed. None ever was and on November 9, 1971, another division of this court entered its order relieving counsel initially appointed and appointing in their stead present counsel. Thereafter, the opening brief was timely filed as was the People's brief and appellants' reply brief. Any untoward delay in the determination of these appeals is due to delay of initially appointed counsel to comply with their responsibilities to their clients and the court.

imprisonment. They were acquitted of all other counts against them.[2] The victims of the three kidnaping counts as to which convictions resulted were Glenn Arnett, Byrne Fernelius and Sam Winningham.

The remaining 6 appellants were convicted on 23 counts of false imprisonment and acquitted of all other charges against them.

## FACTS

No attack is made on the substantiality of the evidence. We set forth here as many of the facts as appear pertinent to the limited issues raised by these appeals.

The charges in question grew out of a claim by black students at the college that a freshman football coach had, during the course of a game, kicked or otherwise abused a black football player who had gone onto the football playing field although he was not at that moment in the game.

Glenn Arnett was the director of athletics as well as a professor at the college. Sam Winningham was a professor of physical education and the varsity football coach. Byrne Fernelius was a professor and chairman of the department of recreation at the college.

Dr. Arnett read in the student newspaper that there was going to be a meeting between himself and members of the Black Student Union to discuss the firing of the freshman football coach. This was the first he knew of such a meeting. Dr. Arnett conferred with Dr. Winningham and then with Dr. Stanley Charnosky, the head of the educational opportunities program. Dr. Arnett indicated that he would be willing to meet with only three representatives of the Black Student Union.

At the time appointed for the meeting there were 50 or 60 black students in or around the physical education building. After some discussions with appellant Archie Chatman, (who assumed a leadership role in the events to follow) as to the size of the meeting, Arnett, Winningham and Charnosky met in a small conference room with four students, including two of the appellants. The maximum length of this conference was approximately 45 minutes, although other witnesses gave it a shorter duration. During the meeting, Dr. Arnett insisted that since a personnel matter was involved, even if he were disposed to fire the freshman football coach, the question would have to be referred ultimately to the president of the college. The discussion became heated and the students commenced to

---

[2] One of the appellants, Eddie Dancer, was also convicted of a misdemeanor assault charge.

yell. A telephone in the conference room was shoved or thrown at Dr. Arnett so that he could contact the president by telephone.

In the meanwhile, other students occupied the offices of the physical education department whose regular inhabitants were prevented, or felt that they were prevented, from leaving. Dr. Fernelius was in the outer office where the students were present. At a given signal, telephone receivers were taken off the secretaries' desks by male students and placed in wastepaper baskets. At least two times some student or other shouted the word "Positions," and most of the students, both those in and out of the conference room, assumed various stances with their clenched fists.

Additional students entered into the conference room so that there were as many as 18 there.

At one point several of the students made the statement "If the man comes in, we are going to do you."

We now come to the facts which support the conviction of kidnaping. Those in the conference room were advised that they "were going to the administration building." Drs. Arnett, Fernelius and Winningham were then marched from the physical education building to the administration building, a distance of some 700 yards (just slightly less than four-tenths of a mile). They were each physically surrounded by a number of students. Other students, mostly females, went along but were not actually part of the group surrounding the professors.

The professors were moved against their wills to the administration building. During the march, Dr. Arnett was continually jostled or shoved when he tried to delay or stop, as were Drs. Fernelius and Winningham. Each of them went unwillingly; each was afraid; from time to time statements to the effect "Move along whitey or we will stick you" were made. During the forced trek a black student hit a white student on the jaw. Several times during the march appellant Chatman said to other of the students "Let's keep our formation; let's keep them enclosed; we are going to the administration building; don't let them out."

The group marched through the first floor of the administration building, outside again and back inside. The professors were then forced to walk to the fifth floor of the administration building where the president and other top officers of the college had their offices. They were kept on the fifth floor for a matter of some hours until the president of the college arrived and at the direction of appellant Chatman signed a paper relative to various demands of the students.

## CONTENTIONS

Three contentions are raised by appellants: (1) The 13 appellants convicted of conspiracy to commit kidnaping and of kidnaping allege that under the teaching of *People* v. *Daniels,* 71 Cal.2d 1119 [80 Cal.Rptr. 897, 459 P.2d 225], the act of taking Drs. Arnett, Fernelius and Winningham from the physical education building to the administration building did not constitute the crime of kidnaping but rather was an asportation incidental to the crime of false imprisonment; (2) all appellants claim that they were denied equal protection of the law because they were charged in a grand jury indictment rather than by way of information, and (3) a generalized claim is made that the identification procedures used before the grand jury were so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification. We have determined that these claims are without merit.

## THE KIDNAPING CONTENTIONS

*Daniels* established a two-branch test that a kidnaping conviction was improper (1) where the movements of the victims are merely incidental to the commission of the offense otherwise involved — robbery in *Daniels,* and (2) where the movement of the victims did not substantially increase the risk of harm to them over and above that necessarily present in the underlying crime itself. (See also, *People* v. *Timmons,* 4 Cal.3d 411, 414 [93 Cal.Rptr. 736, 482 P.2d 648]; *People* v. *Stathos,* 17 Cal.App.3d 33, 38 [94 Cal.Rptr. 482].) While *Daniels* dealt with a conviction under section 209 of the Penal Code dealing with the charge of aggravated kidnaping for the purpose of robbery, the *Daniels* approach has been held equally applicable to the so-called simple kidnaping involved here under section 207 of the Penal Code. (*People* v. *Williams,* 2 Cal.3d 894, 901 [88 Cal.Rptr. 208, 471 P.2d 1008].)

Appellants here assert that the movement involved here was merely incidental to the crime of false imprisonment. We agree with appellants that the mere distance of a movement as such is not itself the controlling factor. We reject their assertion that *Daniels* precludes a kidnaping conviction.

We look first at the "risk of harm" element. While the question may be one of law in some factual settings, e.g., movements within apartments or premises in connection with robberies and rapes (*People* v. *Daniels, supra,* 71 Cal.2d 1119), in most cases whether a movement substantially increases the risk of harm is a question of fact. (*People* v. *Gibbs,* 12 Cal.App.3d 526, 546 [90 Cal.Rptr. 866]; *People* v. *Moreland,* 5 Cal.App.3d 588, 594

[85 Cal.Rptr. 215].) The trial court here affirmatively found that the reasoning of *Daniels* was not applicable "under the facts in this case."

Compared with the situation in the physical education department offices, during the movement found to constitute the kidnaping, there was a much larger crowd surrounding the three victims of the kidnaping counts. They were bodily and forcibly pushed and shoved during the movement. Threats were made to "stick them" and they were forced to walk against their will down one flight of stairs in the physical education building and up four flights of stairs in the administration building. There is obviously substantial evidence to support the conclusion of the trial court that there was a substantial increase in the risk of harm to the victims.

This conclusion is buttressed by the thought that under the *Daniels* approach there must be an increase in the risk of significant physical injuries over and above those inherent in *the underlying crime* to which the victim is subjected. (*People* v. *Timmons, supra,* 4 Cal.3d 411, 414.) Appellants assume that the "underlying crime" involved in the kidnaping charge was not the movement of the victims itself but rather the false imprisonment to which they were later subjected. A moment's reflection shows that this argument is fallacious. At the same time it shows that the other branch of *Daniels* is not met — i.e., the movements were not merely incidental to another crime.

■ We start with the observation that the crime of false imprisonment is necessarily included in the crime of kidnaping. In *People* v. *Morrison,* 228 Cal.App.2d 707, 713 [39 Cal.Rptr. 874], this obvious proposition was stated as dictum: "A defendant guilty of kidnaping, as defined by either section[s] 207 or 209 of the Penal Code, must necessarily be guilty of the 'unlawful violation of the personal liberty of' his victim[,] and therefore be guilty of false imprisonment as defined by section 236."

In *People* v. *Moreland, supra,* 5 Cal.App.3d 588, 594, this court assumed that the offense of false imprisonment was necessarily included in kidnaping.

In *People* v. *Hernon,* 106 Cal.App.2d 638 [235 P.2d 614], a conviction of false imprisonment was sustained as against an attack on the sufficiency of the evidence where the original charge was kidnaping although the opinion did not itself discuss the lesser included nature of false imprisonment, vis-à-vis kidnaping.

In *People* v. *Gibbs, supra,* 12 Cal.App.3d 526, it was held (at p. 547) that kidnaping necessarily included the crime of false imprisonment effected by violence (the charge made here in counts 36 to 72).

It would be absurd for a *lesser* included offense to so subsume the greater offense as to prevent the greater from happening. For this reason alone appellants' contention is not well taken.

The contention is also off base in that it assumes that there *must be* an underlying crime before a violation of Penal Code section 207 can be found to occur. This assumption is not well taken. In making it one reads the crime of simple kidnaping out of the Penal Code. *Daniels,* as indicated, involved a crime of aggravated kidnaping. By statutory definition in Penal Code section 209 such a crime is committed where there is a kidnaping for the purpose of robbery or for the purpose of holding somebody for ransom, reward, or extortion. Where there is an underlying crime, the *Daniels* doctrine may preclude a conviction of either aggravated or simple kidnaping. But it is still good law that where a person is capable of giving consent, his forcible movement against his will "is kidnaping under Penal Code, section 207, without more" (*People* v. *Oliver,* 55 Cal.2d 761, 765 [12 Cal.Rptr. 865, 361 P.2d 593]), and that a person who forcibly carries and transports another, capable of giving consent, against the will of the latter is guilty of kidnaping "however good or innocent his motive or intent may otherwise be[.]" (Ibid., at p. 766.)[3] *Daniels* clearly does not bar the kidnaping count.

### THE GRAND JURY CONTENTION

The argument here, that a criminal defendant is denied equal protection of the law when he is charged by way of grand jury indictment rather than by way of information, was made and rejected by this court in *People* v. *Pearce,* 8 Cal.App.3d 984 [87 Cal.Rptr. 814]. This court upheld the propriety of the grand jury procedure against due process and equal protection attacks. A similar contention to that under discussion was also rejected in *People* v. *Flores,* 276 Cal.App.2d 61 [81 Cal.Rptr. 197]. We see no reason to depart from these holdings.

### THE CONTENTION THAT THE IDENTIFICATION PROCEDURE BEFORE THE GRAND JURY WAS IMPROPER

Appellants' last contention is phrased as follows: "The identification procedure before the grand jury was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

Appellants then argue that during their grand jury testimony, prosecu-

---

[3]The suggestion in *People* v. *Gibbs,* 12 Cal.App.3d 526, 542 [90 Cal.Rptr. 866] that an illegal purpose or intent is a requisite of any violation of Penal Code section 207 is obviously in error as applied to persons capable of giving their consent.

tion witnesses "were generally asked" whether they recognized persons pictured in the photographs that constituted most of the grand jury exhibits, and that the witnesses were then asked whether he or she identified the person in the picture and what the person did on November 4, 1968. Then, appellants continue, prior to trial the deputy district attorney gave to each prosecution witness a copy of his or her testimony before the grand jury. Additionally, it is argued that most of the witnesses saw photographs of the defendants that they identified before the grand jury. No specific appellant is claimed to have been misidentified.

Appellants state that it was not until the trial had been in progress for some six weeks that they learned that the district attorney had given each witness access to his or her testimony and photographs prior to his or her trial testimony.[4] They state that a motion for mistrial made upon learning this fact should have been granted because the identification procedure *before the grand jury* was impermissibly suggestive.

Appellants' contention is foreclosed by their failure to raise the issue before the trial court. At our request that appellants direct us to the place in the lengthy trial transcript (6,980 pages) where this contention was made at trial, appellate counsel has referred us to the mistrial motion. The entire thrust of that motion was an objection by defense counsel to the district attorney's having given a copy of their grand jury testimony to the prosecution witnesses prior to their trial testimony. This motion was *not* directed to the photographic identification procedure followed in front of the grand jury.

A mere claim that a photographic identification procedure is unfair is not enough to suggest error or place any burden on the People. (*People* v. *Bethea,* 18 Cal.App.3d 930, 938 [96 Cal.Rptr. 229].)

Further, the appellate rule that matters not objected to at the trial may not normally be raised on appeal has been applied to objections to courtroom identifications. (*People* v. *Dobson,* 12 Cal.App.3d 1177, 1181 [91 Cal.Rptr. 443].) Appellants are precluded from raising the objection now.

The judgments are affirmed.

Kaus, P. J., and Stephens, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 12, 1972.

---

[4]Some witnesses testified they did not review photographs prior to trial.