[Crim. No. 15673.   Second Dist., Div. One.   Feb. 14, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. EDWARD ARTHUR TIMMONS, Defendant and Appellant.

Donald F. Roeschke, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and George J. Roth, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, Acting P. J.—This is an appeal from a judgment of conviction of kidnaping and robbery.

In an amended information filed in Los Angeles, Ralph Stewart and Edward Timmons were charged in count 1 with kidnaping Lawrence Baird on January 19, 1968, for the pur-

pose of robbery; in count 2 with kidnaping Dorothy Stephens on January 19, 1968, for the purpose of robbery; in count 3 with robbing Lawrence Baird of about $15,000 on January 19, 1968; and in count 4 of robbing Dorothy Stephens on January 19, 1968, of about $15,000. It was further charged in each count that at the time of the commission of the offense the defendants were armed with a deadly weapon, namely, a knife. It was also charged that Timmons previously had been convicted of robbery in Monterey County (in 1962) and had served a term in prison therefor.

Stewart entered a plea of guilty to count 3. Timmons pleaded not guilty. In a nonjury trial Timmons was found guilty as to each count. The degree of the robberies was found to be second degree. The charge of a prior conviction was found to be not true. The allegation that Timmons was armed was found to be not true. A stay of execution was granted as to counts 2, 3 and 4 pending any appeal and during the service of any term which the Adult Authority pronounced in connection with count 1. The stay was to become permanent at the completion of the service of any sentence with reference to count 1. A timely notice of appeal from the judgment was filed by Timmons.

A résumé of some of the facts is as follows: for a period of about five weeks prior to January 19, 1968, Ralph Stewart (appellant's codefendant) worked for Lloyd's Market in South Gate and from such employment he learned about who of the employees went to the bank for the company and the routine which was followed in bringing money from the bank to the market. Stewart talked with appellant about holding up the employees on three different occasions. Stewart had a Pontiac automobile carrying Georgia license plates. A day or so before January 19, 1968, Stewart and appellant drove around in Stewart's car in the area of the market and on occasions parked close by the market for the purpose of checking at about the time the employees of the market would be arriving from the bank. Stewart and appellant entered into an agreement in effect to rob the employees of the market of the money they were delivering from the bank to the market and agreed that Stewart would get a portion of the loot for doing the driving of his car.

A Mr. Jeffrey who lived close by the market saw some unusual activity involved in the driving and parking of the Pontiac car with the Georgia license plates and took down the

numbers of the license. After the robbery Jeffrey gave the license number to the manager of the store.

On the morning of January 19, 1968, at about 11:15 o'clock Stewart drove with appellant to the market area. Appellant got out of the car with a satchel and Stewart drove on to a designated point about five blocks away where he waited for appellant. It was the understanding that appellant was to hold up Mr. Baird and Miss Stephens, employees of the market, who were to pick up certain money at the bank for the market.

Baird and Miss Stephens drove in a car from the bank to the parking lot of the market with about $15,600 in two bags, one bag of currency and one of coins. As they parked in the lot appellant, carrying a satchel, walked toward the car. His headgear consisted of a motorcycle rider's helmet. Appellant said to Baird, "This is a holdup." He got into the car and told Baird to drive out of the parking lot saying further, "Do as I tell you and I won't hurt anybody. . . . Back up the car and pull out of the parking lot and go to the right." Appellant also told Baird to change the rear view mirror and instructed both Baird and Miss Stephens not to look back. Appellant asked for the money and the sacks of money were delivered to him. Appellant directed Baird to drive, and said "At that fire hydrant, pull up, stop the car, and open the door, . . . When I get out, drive straight ahead." Baird proceeded as directed.

Miss Stephens identified appellant as the robber and kidnaper. Stewart and appellant met at the location upon which they had agreed and at that time appellant had the satchel. Later at appellant's apartment Stewart saw about $15,000 in cash in the satchel and received his share.

Appellant now contends that the testimony of Stewart, the accomplice, was not corroborated.

Only slight evidence of corroboration is required under the circumstances of this case. (See *People* v. *Blau,* 140 Cal.App. 2d 193, 209 [294 P.2d 1047] (cert. denied); *People* v. *Traub,* 175 Cal.App.2d 709, 712 [346 P.2d 805].) Under the circumstances the court was entitled to consider all of the conduct of the parties. (See *People* v. *Williams,* 128 Cal.App.2d 458, 462 [275 P.2d 513].)

There is without question an abundance of corroboration in this record. Jeffrey saw the activities before the robbery and

took down the make and license number of the car. Baird and Miss Stephens testified that appellant had a satchel and a motorcycle helmet when he confronted them in the first instance thereby corroborating Stewart's statement that when appellant got out of his car just prior to the robbery he was carrying a satchel and wearing a motorcycle rider's headpiece. Baird's testimony with reference to the amount of money taken corroborates Stewart's testimony that after the robbery the satchel contained about $15,000. In any event, appellant was positively identified by Miss Stephens as the robber.

Needless to say, appellant did not testify and he did not produce any witness in his behalf.

It is clear from the record that appellant at the time of the offenses with which we are concerned was on parole from a first degree robbery term but the prosecutor for some reason not apparent from the file did not introduce into evidence the record of the prior conviction and as a consequence appellant was sentenced as a first offender.

There is no prejudicial error in the record.

The judgment is affirmed.

Lillie, J., and Thompson, J., concurred.

A petition for a rehearing was denied March 4, 1969, and appellant's petition for a hearing by the Supreme Court was denied April 9, 1969.