[Crim. No. 14188. In Bank. Mar. 24, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
EDWARD ARTHUR TIMMONS, Defendant and Appellant.

**COUNSEL**

Edward Arthur Timmons, in pro. per., and Paul M. Posner, under appointment by the Supreme Court, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, and James H. Kline, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**MOSK, J.**—Edward Arthur Timmons was found guilty on two counts of kidnaping for the purpose of robbery (Pen. Code, § 209) and two counts

of second degree robbery (Pen. Code, § 211). The judgment was affirmed (*People* v. *Timmons* (1969) 269 Cal.App.2d 671 [75 Cal.Rptr. 212]); we denied a petition for hearing in April 1969, and certiorari was denied in June 1969. In October 1969 our decision in *People* v. *Daniels*, 71 Cal.2d 1119 [80 Cal.Rptr. 897, 459 P.2d 225], was filed. Thereafter Timmons filed an application with the Court of Appeal for recall of the remittitur or "other appropriate relief," presenting the sole contention that his case should be reconsidered in the light of *Daniels*. The Court of Appeal denied the application, and we granted a petition for hearing and transferred the application to this court.

The facts of the case are aptly summarized as follows in the Court of Appeal opinion (269 Cal.App.2d at pp. 672-673):

"[F]or a period of about five weeks prior to January 19, 1968, Ralph Stewart (appellant's codefendant) worked for Lloyd's Market in South Gate and from such employment he learned about who of the employees went to the bank for the company and the routine which was followed in bringing money from the bank to the market. Stewart talked with appellant about holding up the employees on three different occasions. Stewart had a Pontiac automobile carrying Georgia license plates. A day or so before January 19, 1968, Stewart and appellant drove around in Stewart's car in the area of the market and on occasions parked close by the market for the purpose of checking at about the time the employees of the market would be arriving from the bank. Stewart and appellant entered into an agreement in effect to rob the employees of the market of the money they were delivering from the bank to the market and agreed that Stewart would get a portion of the loot for doing the driving of his car.

"A Mr. Jeffrey who lived close by the market saw some unusual activity involved in the driving and parking of the Pontiac car with the Georgia license plates and took down the numbers of the license. After the robbery Jeffrey gave the license number to the manager of the store.

"On the morning of January 19, 1968, at about 11:15 o'clock Stewart drove with appellant to the market area. Appellant got out of the car with a satchel and Stewart drove on to a designated point about five blocks away where he waited for appellant. It was the understanding that appellant was to hold up Mr. Baird and Miss Stephens, employees of the market, who were to pick up certain money at the bank for the market.

"Baird and Miss Stephens drove in a car from the bank to the parking lot of the market with about $15,600 in two bags, one bag of currency and one of coins. As they parked in the lot appellant, carrying a satchel, walked toward the car. His headgear consisted of a motorcycle rider's helmet.

Appellant said to Baird, 'This is a holdup.' He got into the car and told Baird to drive out of the parking lot saying further, 'Do as I tell you and I won't hurt anybody. . . . Back up the car and pull out of the parking lot and go to the right.' Appellant also told Baird to change the rear view mirror and instructed both Baird and Miss Stephens not to look back. Appellant asked for the money and the sacks of money were delivered to him. Appellant directed Baird to drive, and said 'At that fire hydrant, pull up, stop the car, and open the door, . . . When I get out, drive straight ahead.' Baird proceeded as directed."

When they reached the fire hydrant, Timmons got out with his satchel and walked down the street, where he was picked up by Stewart in the Pontiac. Baird and Miss Stephens, who drove on in their car, were not harmed in any way.

▇ There is no material dispute as to the facts. The issue, therefore, is whether Timmons' act of compelling Baird and Miss Stephens to drive some five city blocks in the circumstances shown amounted to conduct proscribed by Penal Code section 209 as we construed it in *Daniels.*

First, there can be no doubt that the movement was "incidental to the commission of the robbery." (71 Cal.2d at p. 1139.) The car was in fact the moving situs of the robbery in this case; its movement allowed Timmons to relieve the victims of their money with less danger of detection than if he had robbed them in a busy parking lot, and facilitated his escape by transporting the eyewitnesses to a place where it would be more difficult for them to raise an immediate alarm. A reasonably brief movement for the purpose of facilitating the commission of a robbery is "incidental" thereto within the meaning of *Daniels.* (*People* v. *Williams* (1970) 2 Cal.3d 894, 902 [88 Cal.Rptr. 208, 471 P.2d 1008].)

Turning to the second branch of the *Daniels* test, we recognize that for the reasons just stated the movement of the car also increased the likelihood that the victims would be robbed. But that risk is not what we meant in *Daniels* (at p. 1139 of 71 Cal.2d) when we spoke of movements which "substantially increase the risk of harm" beyond that inherent in the underlying crime.[1] Rather, we intended to refer to an increase in the risk that the victim may suffer significant physical injuries over and above those to which a victim of the underlying crime is normally exposed. (See, e.g., *People* v. *Ramirez* (1969) 2 Cal.App.3d 345 [82 Cal.Rptr. 665], discussed *post,* p. 415.)

Further, in determining whether the movement substantially increased

---

[1]Language to the contrary in *People* v. *Thomas* (1970) 3 Cal.App.3d 859, 866 [83 Cal.Rptr. 879], is disapproved.

that risk we eschew a rigid "indoor-outdoor" rule of thumb. We explained in *Daniels* (*id*. at p. 1140) that when a robber merely moves his victim around inside the premises in which he finds him, "his conduct *generally* will not be deemed to constitute the offense proscribed by section 209." (Italics added.) The emphasized qualifier means, however, that there may be circumstances in which a robber can properly be convicted of kidnaping even though he does not take his victim outside the premises in question. And by the same token, there may be circumstances in which a robber who does take his victim outside the premises—or finds him outdoors and moves him from one place to another—cannot properly be convicted of kidnaping. (See, e.g., *People* v. *Schafer* (1970) 4 Cal.App.3d 554, 560-561 [84 Cal.Rptr. 464] [two rape victims moved by car for distances estimated to be "about one mile" and "a few hundred yards"; held, *Daniels* compels reversal of kidnaping counts]; cf. *People* v. *Williams* (1970) *supra*, 2 Cal.3d 894, 903.)

The true test in each case is not mere mileage but whether the movements of the victims "*substantially* increase the risk of harm" beyond that inherent in the crime of robbery itself. (Italics added; 71 Cal.2d at p. 1139.) Again the qualifier is significant. In *People* v. *Ramirez* (1969) *supra*, 2 Cal.App.3d 345, for example, the defendant and his confederate Laurent accosted their intended rape victim at 2:30 a.m. in a factory parking lot, dragged her into their car, and sped away. The police were alerted and a patrol car gave chase. As soon as the fleeing felons realized they were being followed, their vehicle "took an erratic course." The victim protested there would be an accident and she would be killed, but the defendant ordered Laurent to drive even faster. Finally the car overturned in a crash in which Laurent received fatal injuries. Rejecting the applicability of *Daniels* to such circumstances, the Court of Appeal reasoned (*id*. at p. 356) that "the manner of the detention and movement substantially increased the risk of harm to [the victim] over and above that necessarily incident to the crime of rape—the risk being so great that the driver of the car met his death as a result."

In sharp contrast, here Baird and Miss Stephens simply drove their own car for some five blocks along a city street in broad daylight, while Timmons accomplished the robbery and proceeded to the rendezvous with his accomplice. The police were not in hot pursuit, and there was no high-speed chase and consequent reckless driving. On the contrary, it was to Timmons' advantage that the car be driven as innocuously as possible so as to attract no attention from passersby. Neither victim observed any weapon in Timmons' possession, and the court found he was not armed. As noted above, neither victim suffered any harm whatever.

In the circumstances, this brief asportation may conceivably have increased the risk in some slight degree beyond that inherent in the commission of the robberies, but it cannot be said to have "substantially" increased that risk.[2]

For the reasons stated in *People* v. *Mutch, ante,* p. 389 [93 Cal.Rptr. 721, 482 P.2d 633], Timmons was therefore convicted of kidnaping to commit robbery under a statute which did not prohibit his acts at the time he committed them, and is entitled to a recall of the remittitur in his appeal and an order vacating the judgment on the kidnaping counts.

The cause is retransferred to the Court of Appeal for the Second Appellate District with directions to recall its remittitur in *People* v. *Timmons,* 269 Cal.App.2d 671 [75 Cal.Rptr. 212], and to issue a new remittitur vacating the judgment as to counts I and II and affirming the judgment as to counts III and IV.

Tobriner, Acting C. J., Peters, J., and Kaus, J.,* concurred.

**BURKE, J.**—I dissent for the reasons set forth in my dissent in *People* v. *Mutch, ante,* p. 389 [93 Cal.Rptr. 721, 482 P.2d 633]. In my opinion the application for recall of the remittitur should be denied.

McComb, J., concurred.

**SULLIVAN, J.,** Dissenting.—Applying the criterion of *Daniels* to the undisputed facts in this case, I am unable to conclude that, as a matter of law, the conduct of the defendant in this case did not constitute kidnaping. I am therefore of the view that the rationale of *In re Zerbe* (1964) 60 Cal.2d 666 [36 Cal.Rptr. 286, 388 P.2d 182, 10 A.L.R.3d 840], as applied in *People* v. *Mutch, ante,* p. 389 [93 Cal.Rptr. 721, 482 P.2d 633], is not applicable to this case and that the judgment should not be vacated as to counts I and II.

For these reasons as well as those set forth in my concurring and dissenting opinion in *People* v. *Mutch, supra, ante,* p. 389, I would deny the motion to recall the remittitur.

Respondent's petition for a rehearing was denied April 22, 1971. Wright, C. J., did not participate therein. Kaus, J.,* participated therein. Burke, J., and Sullivan, J., were of the opinion that the petition should be granted.

---

[2]To avoid misunderstanding, we reiterate that in a different set of circumstances a movement of five city blocks might well "substantially" increase the risk and thereby expose the robber to a prosecution for kidnaping.

*Assigned by the Acting Chairman of the Judicial Council.