CHIN, J., Concurring and Dissenting.
I disagree with the majority’s conclusion that a substantially increased risk of psychological harm may establish the asportation requirement for defendant’s conviction under Penal Code section 209, subdivision (b).[1] This conclusion is contrary to both the Legislature’s intent and our prior decisions. Thus, I conclude the trial court erred in instructing the jury it could consider an increased risk of “mental damage.”
*887 However, I agree with the majority’s conclusion that the instructional error was harmless. (Maj. opn., ante, at p. 886, fn. 7.) I therefore concur in the affirmance of defendant’s conviction.
I. People v. Daniels
As the majority explains, before 1997, section 209 did not expressly specify as a requirement that the movement of the victim increased the risk of harm. We first announced this requirement in People v. Daniels (1969) 71 Cal.2d 1119 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677] (Daniels). There, we held that “the intent of the Legislature in amending . . . section 209 in 1951 was to exclude from its reach not only ‘standstill’ robberies [citation] but also those in which the movements of the victim are merely incidental to the commission of the robbery and do not substantially increase the risk of harm over and above that necessarily present in the crime of robbery itself. (See Note, Room-to-Room Movement: A Risk Rationale for Aggravated Kidnaping (1959) 11 Stan.L.Rev. 554, 555; Note, A Rationale of the Law of Kidnapping (1953) Colum.L.Rev. 540, 554-557.)” (Daniels, supra, 71 Cal.2d at p. 1139.)
Although our Daniels opinion does not speak clearly to the issue now before us, for two reasons I conclude that Daniels requires an increased risk of physical or bodily harm, and that an increased risk of only psychological harm is insufficient. First, the two law review articles we cited as authority for our holding support this conclusion. The sole focus of the first article is the history, construction, and application of section 209. (Note, Room-to-Room Movement: A Risk Rationale for Aggravated Kidnapping (1959) 11 Stan. L.Rev. 554 (hereafter Room-to-Room Movement).) The page of the article Daniels cites identifies the justification for section 209’s harsh penalties as “a substantial risk of bodily harm” and “an express threat of death or great bodily injury.” (Room-to-Room Movement, supra, 11 Stan. L.Rev. at p. 555, italics added.) Nowhere on the cited page or anywhere else in the article is there even a reference to psychological harm. The second article considers the law of kidnapping generally, including the justification for making kidnapping a separate crime. (Note, A Rationale of the Law of Kidnapping (1953) 53 Colum. L.Rev. 540.) The portion of the article Daniels cites concludes by asserting that a separate kidnapping offense should be limited to kidnapping for ransom, which alone involves “conduct which ... is invariably of a highly dangerous order. In ransom kidnappings the means by which the victim is subjugated must almost inevitably be forcible; the victim must be subdued for a period of time sufficient to allow the defendant to demand and secure the ransom, and the accomplishment of the defendant’s purpose involves at least a threat to harm or kill the captive.” (Note, A *888 Rationale of the Law of Kidnapping, supra, 53 Colum. L.Rev. at p. 557, italics added.) In context, the referenced “threat to harm” logically refers to a threat to inflict bodily harm, which is the kind of harm kidnappers threaten in order to accomplish their purpose, i.e., payment of ransom. Thus, our reliance in Daniels on these articles strongly suggests we were referring to an increased risk of only bodily harm.
Second, my conclusion is consistent with both the analysis in Daniels and the very existence of its “increased risk of harm” requirement. In Daniels, we relied in part on People v. Jackson (1955) 44 Cal.2d 511 [282 P.2d 898] (Jackson). There, we refused broadly to construe the term “bodily harm,” reasoning: “If the more serious penalty [under section 209] may be imposed when the only injury is of a nature similar to that shown by the present record, which concededly is almost necessarily an incident to every forcible kidnapping, neither the purpose of enhancement of the penalty for the more heinous crime nor the intention of deterring the kidnaper from killing or injuring his victim is subserved.” (Jackson, supra, 44 Cal.2d at p. 517, italics added.) After quoting this passage, we explained in Daniels: “Just as we recognized in Jackson that some minor injuries are necessarily incidental to the crime of forcible kidnapping, so we now recognize that some brief movements are necessarily incidental to the crime of armed robbery. Indeed, ‘It is difficult to conceive a situation in which the victim of a robbery does not make some movement under the duress occasioned by force or fear.’ [Citation.]” (Daniels, supra, 71 Cal.2d at p. 1134.) Similarly, every movement that is not incidental' to a robbery inflicts actual and significant emotional harm, unless the victim is unaware of or cannot understand what is happening. (See People v. Wolcott (1983) 34 Cal.3d 92, 1081 [192 Cal.Rptr. 748, 665 P.2d 520]; People v. Schoenfeld (1980) 111 Cal.App.3d 671, 687 [168 Cal.Rptr. 762].) Thus, under the majority’s interpretation, the second requirement Daniels announced—a substantially increased risk of harm—is effectively no requirement at all. The Daniels requirement only has meaning if it refers to the risk of bodily harm.[2]
I disagree with the majority that, having “expressly recognized” the word “harm” could include mental suffering, the Daniels court “logically must have intended” that the statutory requirement can “be satisfied by a substantially increased risk of either physical or mental harm.” (See maj. opn., ante, at pp. 885-886, original italics.) For this conclusion, the majority relies on our quotation in Daniels of a passage from People v. Tanner (1935) 3 Cal.2d *889 279, 297 [44 P.2d 324] (Tanner), which stated in part: “Harm is defined as ‘hurt; injury; damage; (2) grief, pain, sorrow; (3) evil; wrong; wickedness.’ [Citation.]” (Maj. opn., ante, at p. 885; Daniels, supra, 71 Cal.2d at p. 1132.) However, Tanner addressed a completely different issue of section 209’s construction: the meaning of the term “bodily harm” in the statute’s punishment provision. (Tanner, supra, 3 Cal.2d at p. 297.) Moreover, in Daniels, soon after quoting what “[t]he court. . . said” in Tanner, we explained that Jackson “reconsidered the matter” and concluded: “ ‘[I]t is seriously questionable whether the definition in the Tanner case states the intention of the Legislature ....’” (Daniels, supra, 71 Cal.2d at p. 1133.) Thus, Daniels did not endorse the cited Tanner discussion, but cited its subsequent rejection in Jackson only to demonstrate that we may properly reconsider and overrule our prior cases interpreting section 209 despite legislative silence. (Daniels, supra, 71 Cal.2d at p. 1134.) When we later held in Daniels that a substantially increased risk of harm is necessary for a section 209 conviction, we were not referring back to Tanner’s definition of harm, which appeared much earlier in the Daniels opinion in an entirely unrelated discussion and which, as Daniels recognized, Jackson had rejected. Rather, as I have explained, we were referring to the risk of bodily harm discussed in the two law review articles we specifically cited in establishing this requirement.
Indeed, were the majority correct that we were referring to Tanner’s subsequently rejected definition of harm, an increased risk of evil, wrong, wickedness, sorrow, or grief—terms that also appeared in the quoted Tanner definition—would be sufficient. I do not believe Daniels meant to construe section 209 so broadly. Moreover, it appears that the very source Tanner used to define the word “harm” indicated that the definition on which the majority relies—grief, pain, sorrow—was obsolete, i.e., it had disappeared from current usage. (Webster's New Internat. Dict. (2d ed. 1948) pp. xcv, 1139.) Thus, the Daniels passage the majority cites does not support its conclusion that a substantially increased risk of psychological harm is sufficient.
II. Decisions Applying Daniels
According to the majority, our post-Daniels cases are “unhelpful” in determining the issue in this case. (Maj. opn., ante, at p. 878.) I disagree; our decisions actually applying Daniels to determine whether the evidence sustains a conviction under section 209 strongly support the conclusion that a substantially increased risk of psychological harm does not satisfy the second Daniels requirement.
Our first significant decision in this regard was People v. Timmons (1971) 4 Cal.3d 411 [93 Cal.Rptr. 736, 482 P.2d 648] (Timmons), which we decided *890 only 15 months after Daniels. The sole issue in Timmons was whether the evidence showed that the defendant committed “conduct proscribed by . . . section 209 as we construed it in Daniels.” (Timmons, supra, 4 Cal.3d at p. 414.) Applying the Daniels two-part test, we first found that the five-block movement of the defendant’s victims “was ‘incidental to the commission of the robbery.’ [Citation.]” (Timmons, supra, 4 Cal.3d at p. 414.) Applying “the second branch of the Daniels test,” we explained: “[W]e recognize that . . . the movement of the car also increased the likelihood that the victims would be robbed. But that risk is not what we meant in Daniels [citation] when we spoke of movements which ‘substantially increase the risk of harm’ beyond that inherent in the underlying crime. Rather, we intended to refer to an increase in the risk that the victim may suffer significant physical injuries over and above those to which a victim of the underlying crime is normally exposed.” (Timmons, supra, 4 Cal.3d at p. 414, italics added, fn. omitted.) Applying this standard, we concluded in Timmons that the defendant’s conduct did not meet the Daniels test. (Timmons, supra, 4 Cal.3d at pp. 415-416.) We reached this conclusion even though the defendant moved his victims to “a place where it would be more difficult for them to raise an immediate alarm” and he could rob them “with less danger of detection” (id. at p. 414), which surely substantially increased the risk they would suffer psychological harm.
In subsequent decisions, we have consistently applied Daniels as we did in Timmons, i.e., as requiring that the movement substantially increased the risk of physical harm. In People v. Beamon (1973) 8 Cal.3d 625, 636 [105 Cal.Rptr. 681, 504 P.2d 905], we rejected a challenge to the sufficiency of the evidence to sustain a section 209 conviction, explaining: “In People v. Timmons [citation] we stated that the Daniels risk-of-harm test referred ‘to an increase in the risk that the victim may suffer significant physical injuries over and above those to which the victim of the underlying crime is normally exposed.’ [Citation.] There was present here by reason of the abduction a material increase in the risk that the victim would suffer significant physical injuries . . . .” In People v. Milan (1973) 9 Cal.3d 185, 192 [107 Cal.Rptr. 68, 507 P.2d 956], we again quoted Timmons's statement that an increased risk of “ ‘significant physical injuries’ ” is necessary for a section 209 conviction. We then affirmed the defendant’s conviction because the asportation “gave rise to dangers, not inherent in robbery, that a traffic collision would occur and that as a result of the motion of the car the gun [held to the victim’s head] would accidentally discharge.” (People v. Milan, supra, 9 Cal.3d at p. 193.) In In re Crumpton (1973) 9 Cal.3d 463, 467 [106 Cal.Rptr. 770, 507 P.2d 74], we overturned a section 209 conviction in part because the movement of the victim did not substantially increase the risk of “physical harm” or “physical assault.” In People v. Stanworth (1974) 11 *891 Cal.3d 588, 598 [114 Cal.Rptr. 250, 522 P.2d 1058], disapproved on another ground in People v. Martinez (1999) 20 Cal.4th 225, 237 [83 Cal.Rptr.2d 533, 973 P.2d 512] (Martinez), we reversed a conviction under section 209, applying the Timmons formulation of the Daniels test and finding “no evidence” the asportation “substantially increased the risk . . . [the victim] would suffer physical harm.” (11 Cal.3d at p. 598, italics added.)
In In re Earley (1975) 14 Cal.3d 122 [120 Cal.Rptr. 881, 534 P.2d 721] (Earley), we applied Daniels in considering a habeas corpus petition challenging the sufficiency of the evidence to sustain a section 209 conviction. We explained that in this context, the defendant could obtain relief only if “as a matter of law” his conduct did not violate section 209 “as construed” in Daniels. (Earley, supra, 14 Cal.3d at p. 125.) Thus, we had “to consider the exact nature of the Daniels test.” (Earley, supra, 14 Cal.3d at p. 126.) As to the “increased risk of harm” requirement, we quoted Timmons in stating that this requirement “ ‘refers to the risk created by the victim’s movements that he will “suffer significant physical injuries over and above those to which a victim of the underlying crime is normally exposed”; . . . [Citation.]’ [Citation.]” (Earley, supra, 14 Cal.3d at p. 131.) Applying this rule, we upheld the conviction, finding “that the asportation gave rise to dangers, not inherent in robbery, that an auto accident might occur or that the victim might attempt to escape from the moving car or be pushed therefrom by [the defendant].” (Earley, supra, 14 Cal.3d at p. 132.) We also expressly endorsed both a 1973 CALJIC instruction that used the “ ‘significant physical injuries’ ” formulation (Earley, supra, 14 Cal.3d at p. 128, fn. 8) and a statement from Justice Mosk’s dissent in an earlier decision that the movement must “ ‘substantially increase[] the risk of physical harm to the victim . . . .’” (Id. at p. 128, fn. 7 & accompanying text.)
Finally, in People v. Rayford (1994) 9 Cal.4th 1 [36 Cal.Rptr.2d 317, 884 P.2d 1369] (Rayford), we applied section 209’s asportation requirement in an appeal from a conviction under section 208 for kidnapping with the intent to commit rape. We first held that section 209’s asportation requirement governs in prosecutions under section 208. (Rayford, supra, 9 Cal.4th at pp. 20-21.) We then rejected the defendant’s argument that the evidence failed to establish this requirement, stating: “The jury here applied the Daniels test to find that defendant moved [the victim] a ‘substantial distance’ and that this movement ‘substantially increased’ her risk of physical injury ‘over and above those to which such person is normally exposed in the commission of the crime of rape.’ Applying the same test, we conclude that the evidence of asportation in this case was sufficient to support the kidnapping conviction.” (Rayford, supra, 9 Cal.4th at p. 23, italics added.)
These decisions demonstrate that under Daniels, a substantially increased risk of physical harm is necessary to sustain defendant’s section 209 conviction, and that a substantially increased risk of only psychological harm is *892 insufficient. In each of them, we had to determine whether the evidence satisfied the Daniels requirements for a conviction under section 209 (or a statute incorporating its asportation requirement). In each of them, we specifically referred only to an increased risk of physical harm. In none of them did we look to the risk of psychological harm, even though doing so might have resulted in affirmance rather than reversal. Thus, the majority’s conclusion is inconsistent with our subsequent construction and application of Daniels.
Although citing some (but not all) of these decisions, the majority, with little analysis, declines to follow them. Instead, the majority asserts that because Timmons did not address the “precise question” of whether a substantially increased risk of psychological harm is alone sufficient under Daniels, its unequivocal statement of the need for an increased risk of physical injury was “unnecessary . . . and, thus, dicta.” (Maj. opn., ante, at p. 879.) Similarly, in a footnote, the majority summarily casts aside the other decisions I have cited, asserting that the question of physical versus psychological harm “was not posed” in them. (Maj. opn., ante, at p. 879, fn. 2.)
The majority is incorrect. As I have explained, in Timmons and the other cited cases, we had to decide whether the evidence at trial actually established the Daniels requirement that the movement substantially increased the risk of harm. Were the risk of psychological injury relevant to this question, we certainly would have discussed that risk, especially before reversing convictions for insufficient evidence. But we never even mentioned the risk of psychological injury, and instead focused exclusively on the increased risk of physical harm. Thus, even were the majority correct that none of the decisions I have cited “directly mention[s] the point” we are considering here, each, “on its facts, necessarily stands as a direct authority on the question.” (Bank of Italy etc. Assn. v. Bentley (1933) 217 Cal. 644, 650 [20 P.2d 940]; see also Brown v. Kelly Broadcasting Co. (1989) 48 Cal.3d 711, 734-735 [257 Cal.Rptr. 708, 771 P.2d 406] [“ ‘the language of an opinion must be construed with reference to the facts presented by the case, and the positive authority of a decision is coextensive only with such facts’ ”].) The majority, therefore, errs in characterizing the statement in Timmons as dictum and in declining to follow Timmons and the other cases I have discussed.
Of course, even under the majority’s mistaken view that our statement in Timmons was dictum, “it does not follow that” the statement should necessarily “be discarded.” (San Joaquin etc. Irr. Co. v. Stanislaus (1908) 155 Cal. 21, 28 [99 P. 365].) We often follow dicta, especially dicta in which courts have “long acquiesce[d].” (In re Garner (1918) 179 Cal. 409, 411 [177 P. *893 162], disapproved on another ground in In re Lynch (1972) 8 Cal.3d 410, 424, fn. 15 [105 Cal.Rptr. 217, 503 P.2d 921].) The majority offers no persuasive reason for declining to follow our decisions that for almost 30 years have construed and applied Daniels to require a substantially increased risk of physical harm. Indeed, as I explain in this opinion, those decisions are, in fact, consistent with both Daniels and section 209’s history. The majority’s conclusion is consistent with neither.
The majority is correct, however, in declining to rely on People v. Laursen (1972) 8 Cal.3d 192 [104 Cal.Rptr. 425, 501 P.2d 1145] (Laursen), which the Attorney General cites. There, we stated: “In People v. Daniels [citation], we held ‘that the intent of the Legislature in amending . . . section 209 in 1951 was to exclude from its reach not only “standstill” robberies [citation omitted] but also those in which the movements of the victim are merely incidental to the commission of the robbery and do not substantially increase the risk of harm over and above that necessarily present in the crime of robbery itself.’ [Citation.] Thus, the primary purpose of the statute is to impose harsher criminal sanctions to deter the carrying away of persons during the commission of a robbery in a manner which substantially increases the risk that someone will suffer grave bodily or psychic injury or even death.” (Laursen, supra, 8 Cal.3d at p. 198.)
For several reasons, the Attorney General’s reliance on Laursen is unpersuasive. First, as the majority correctly explains, the statement the Attorney General cites was unnecessary to the Laursen decision. (Maj. opn., ante, at p. 879.) The defendant in Laursen contended that for a section 209 violation, an intent to kidnap must exist before the robbery begins and the movement of the victim must occur before the robbery’s completion. (Laursen, supra, 8 Cal.3d at p. 198.) To resolve this contention, we did not need to consider— and, in fact, did not consider—whether an increased risk of psychological harm satisfies section 209’s asportation requirement. In this crucial regard, Laursen is different from the cases I have discussed above, in which we had to determine whether the evidence satisfied section 209’s asportation requirement. Second, Laursen offered no analysis for its statement about section 209’s purpose; it analyzed neither Daniels nor the statute’s legislative history. Third, other statements in Laursen support the conclusion that a substantially increased risk of psychological harm is not sufficient under Daniels to sustain a section 209 conviction. After concluding that section 209 applies to kidnappings committed to effect a robber’s escape, Laursen cited “our holding[]” in Timmons with approval in stressing that the Daniels two-part asportation test applies to all section 209 prosecutions. (Laursen, supra, 8 Cal.3d at p. 200.) And, in explaining the “logic” of interpreting section 209 consistently with the law on felony murder, Laursen stated: *894 “Through the imposition of harsher penalties, both seek to deter an aggravation of the risks to which persons involved in a robbery would otherwise be exposed. And to this extent both are reflections of the skeptical, though sensible, belief that a transgressor’s intention to avoid physical injury at the time he embarks upon the . . . robbery serves as no reasonable safeguard that death or physical injury will not result before he finishes.” (Laursen, supra, 8 Cal.3d at p. 200, fn. 6, italics added.) These considerations no doubt explain why in the almost 30 years since we decided Laursen we have never applied or even mentioned the statement the Attorney General now cites. Indeed, to the extent Laursen is relevant, it is, for the most part, consistent with my conclusion.
III. Legislative History
As the majority explains, a 1933 amendment to section 209 linked the severity of punishment to whether the victim “suffer[ed] bodily harm.” (Stats. 1933, ch. 1025, § 1, p. 2618.) This linkage had a dual purpose: to recognize that the crime is more heinous and deserves a more severe penalty when a victim suffers bodily harm and to deter kidnappers from inflicting such harm. (Jackson, supra, 44 Cal.2d 511, 517.) The punishment for kidnapping for robbery remained linked to whether the victim “suffer[ed] bodily harm” until 1976, when the Legislature reorganized section 209, placed kidnapping for robbery in subdivision (b), and retained the linkage between punishment and “bodily harm” only for those crimes in subdivision (a) . (Stats. 1976, ch. 1139, § 136.5, p. 5099.) In 1997, the Legislature added a paragraph to subdivision (b) that provides: “This subdivision shall only apply if the movement of the victim is beyond that merely incidental to the commission of, and increases the risk of harm to the victim over and above that necessarily present in, the intended underlying offense.” (§ 209, subd. (b) (2), added by Stats. 1997, ch. 817, § 2.)
For several reasons, this statutory evolution supports the conclusion that an increased risk of psychological harm does not satisfy section 209’s asportation requirement. First, it provides the context for understanding Daniels. When we decided Daniels in 1969, the legislative focus of section 209 was, as it had been since 1933, preventing the infliction of bodily harm on the victim. Logically, when we held in Daniels that the Legislature intended section 209 to apply only where the movement “substantially increase[d] the risk of harm” (Daniels, supra, 71 Cal.2d at p. 1139), we were referring only to bodily harm, which is the kind of harm the Legislature expressly designed the statute to prevent. Nothing in Daniels indicates we were using the word “harm” in any other sense. On the contrary, as I have explained, the second Daniels requirement—a substantially increased risk of *895 harm—effectively does not exist under the majority’s interpretation of Daniels. As I have also explained, the definition on which the majority relies—grief, pain, sorrow—was obsolete.
Second, in the 1997 legislation that added language to subdivision (b) similar to the Daniels test, the Legislature included an uncodified section declaring its “intent” that the Daniels “two-prong test of asportation ... be applied” to kidnapping for robbery prosecutions “pursuant to” our decision in Rayford, supra, 9 Cal.4th 1. (Stats. 1997, ch. 817, § 17.) This amendment “codifie[d] both Rayford’ and “a modified version of’ the Daniels asportation standard. (Martinez, supra, 20 Cal.4th at p. 232, fn. 4.) As I have explained, in Rayford, we used the following test in applying Daniels to determine the sufficiency of the evidence: whether “defendant moved [the victim] a ‘substantial distance’ ” and whether “this movement ‘substantially increased’ her risk of physical injury . . . .” (Rayford, supra, 9 Cal.4th at p. 23, italics added.) Thus, the relevant legislative history supports the conclusion that for conviction under section 209, subdivision (b), the movement of the victim must have increased the risk of bodily harm; an increased risk of psychological harm is insufficient.
By contrast, the most the majority can say about section 209’s history to support its conclusion is that the Legislature’s decision to impose greater punishment on aggravated kidnappers who inflict bodily harm on their victims “does not necessarily mean” the Legislature intended to require an increased risk of only physical injury. (Maj. opn., ante, at p. 885.) Arguably, the majority may be correct that the “bodily harm” requirement in section 209’s punishment provision does not necessarily establish that an increased risk of psychological harm is insufficient. However, for the reasons I have discussed, it fully supports that conclusion. Moreover, the majority cites nothing in either the statute’s history or our cases that supports its contrary view.
In summary, Daniels, our decisions applying it, and section 209’s history all indicate that a substantially increased risk of only psychological harm cannot establish the asportation requirement for defendant’s section 209 conviction. Thus, the trial court erred in instructing the jury it could consider an increased risk of “mental damage.”
IV. Harmless Error
Although I conclude the trial court incorrectly instructed the jury, I agree with the majority that the error was harmless because the evidence demonstrates to a virtual certainty that the movement of the victim substantially *896 increased the risk of bodily injury. (Maj. opn., ante, at p. 886, fn. 7; see People v. Flood (1998) 18 Cal.4th 470 [76 Cal.Rptr.2d 180, 957 P.2d 869].) Accordingly, I concur in the affirmance of the Court of Appeal’s judgment.
Brown, J., concurred.

All further statutory references are to the Penal Code.

The majority correctly notes that Daniels required that the movement substantially increased the risk of harm. (Maj. opn., ante, at p. 886, fn. 6.) However, since 1997, section 209 has -expressly provided that it “only appl[ies]” if the movement is more than “merely incidental . . . and increases the risk of harm . . . .” (§ 209, subd. (b)(2).)