Filed 10/22/20  In re P.L. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| In re P.L., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | E070287, E070767 |
| Plaintiff and Appellant, | (Super.Ct.No. RIJ1400019) |
| v. | OPINION |
| P.L., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Mark E. Petersen, Judge.

Affirmed in part, reversed in part, and remanded with directions..

Michael A. Hestrin, District Attorney, and Robert A. Hightower and Emily R. Hanks, Deputy District Attorneys, for Plaintiff and Appellant.

Ashley N. Johndro and Helen Simkins Irza, under appointment by the Court of Appeal, for Defendant and Appellant.

1

The minor repeatedly sexually abused a girl six years younger than he was. He began by pulling her into his bedroom, threatening her with a gun, pushing her onto the bed, and touching her "private part." Over the next year or two, he escalated to forcing her to orally copulate him and forcibly sodomizing her.

The juvenile court found that the minor had committed kidnapping for the purpose of a sex offense (Pen. Code, § 209, subd. (b)), forcible oral copulation (Pen. Code, § 288a, subd. (c)(2)(B)), and forcible sodomy (Pen. Code, § 286, subd. (c)(2)(B)). It denied the People's request to commit him to the Department of Juvenile Facilities (DJF).

The minor appeals. He contends that, for purposes of the aggravated kidnapping finding, there was insufficient evidence of the necessary asportation — i.e., insufficient evidence that the movement of the victim was beyond that merely incidental to the commission of, and increased the risk of harm over and above that necessarily present in, the intended sex offense. We agree. Accordingly, we will reverse this finding.

The People also appeal. They contend that the juvenile court erred by finding that the minor was ineligible for a DJF commitment. Supreme Court authority compels us to disagree.

I

STATEMENT OF FACTS

In January 2016, K.H. — then aged 10 — disclosed to her mother that the minor had sexually abused her.

Between 2013 and 2015, K.H. visited the minor's house on various occasions. Sometimes, the minor's older sister babysat K.H. after school. Other times, K.H. went there to play with the minor's younger brother.

The minor's house had two stories. At the top of the stairs, there was a hallway, running from left to right, with a bathroom at the left end, and then, going to the right, defendant's bedroom, his sister's bedroom, and his parents' bedroom.

K.H. testified that in 2014, when she was eight, as she was coming out of the upstairs bathroom, the minor pulled her into his bedroom by her arm. The door was "[h]alfway open." He pointed a gun at her and told her to be quiet. He then pushed her onto the bed, pulled down her pants, and touched her "private part" under her underwear. At the time, the minor's sister was in her room, with the door closed.

A couple of months later, the minor pulled K.H. into his bedroom again, this time by the shoulder. He said something about his gun,[1] then forced her to orally copulate him. Ultimately, he made her orally copulate him a total of 11 times when she was between eight and nine.

On two occasions, sometime between July and October 2015, the minor forcibly sodomized K.H. In February 2016, a forensic sexual assault examination of K.H. showed anal dilation and healing anal fissures, which were consistent with sodomy but also consistent with other causes.

---

[1] In a forensic interview, K.H. said he pointed a gun at her head and said, "You better do it or I'm gonna shoot you in the head."

Generally, during the sex offenses, the minor's sister was either downstairs, studying or cooking, or in her bedroom, listening to music or asleep.

In December 2015, the minor's father found two inoperable handguns in the minor's room.

The minor took the stand and denied all of K.H.'s allegations.

Three witnesses — the minor's older sister, the minor's younger brother, and another child who was also babysat in the home — all testified that the minor was never alone with K.H. and did not interact with K.H.

The minor's older sister testified that, when she was babysitting, she was usually downstairs, doing homework; the children she was babysitting might be upstairs or downstairs. She supervised them by calling to them every 30 minutes and sometimes by going to check on them. She never shut her bedroom door while they were there.

K.H. never seemed to be uncomfortable with the minor or to be avoiding him.

The minor's father, sister, and brother all testified that, from October or November 2014 through July or August 2015, the minor's bedroom had no door. The door had been removed because the minor was using marijuana and getting tattoos.

An expert psychologist testified that the minor did not have any sexually deviant interest in children.

II

EVIDENCE OF ASPORTATION

The minor contends that there was insufficient evidence of the necessary asportation to support the finding of kidnapping for the purpose of a sex offense.

This finding was based on the evidence that defendant pulled the victim into his bedroom on either or both of two separate occasions — first, to commit a lewd act, and a couple of months later, to force the victim to orally copulate him.

One of the elements of aggravated kidnapping, which includes kidnapping for the purpose of a sex offense as well as kidnapping for the purpose of robbery, is that "the movement of the victim is beyond that merely incidental to the commission of, and increases the risk of harm to the victim over and above that necessarily present in, the intended underlying offense." (Pen. Code, § 209, subd. (b)(2).)

The rationale behind this heightened asportation requirement is that "some brief movements are necessarily incidental to the [intended] crime . . . . Indeed, '[i]t is difficult to conceive a situation in which the victim of [such a crime] does not make some movement under the duress occasioned by force or fear.' [Citation.] . . . [S]uch incidental movements are not of the scope intended by the Legislature in prescribing the asportation element of the . . . crime." (*People v. Daniels* (1969) 71 Cal.2d 1119, 1134, fn. omitted.)

"Whether a forced movement of a . . . victim . . . was merely incidental to the [intended crime], and whether the movement substantially increased the risk of harm to

the victim, is difficult to capture in a simple verbal formulation that would apply to all cases." (*People v. Dominguez* (2006) 39 Cal.4th 1141, 1151.)[2]

"With regard to the first prong, the jury considers the 'scope and nature' of the movement, which includes the actual distance a victim is moved.  [Citations.]  There is, however, no minimum distance a defendant must move a victim to satisfy the first prong.  [Citations.]" (*People v. Vines* (2011) 51 Cal.4th 830, 870, overruled on unrelated grounds in *People v. Hardy* (2018) 5 Cal.5th 56, 104.)

With regard to the second prong, the jury "''' . . . consider[s] such factors as the decreased likelihood of detection, the danger inherent in a victim's foreseeable attempts to escape, and the attacker's enhanced opportunity to commit additional crimes.  [Citations.]  The fact that these dangers do not in fact materialize does not, of course, mean that the risk of harm was not increased."'  [Citation.]" (*People v. Vines*, *supra*, 51 Cal.4th at p. 870.)[3]

---

[2]    The words "merely incidental" have proven particularly hard to apply.  (See generally *People v. Taylor* (2020) 43 Cal.App.5th 1102, 1109 ["There [i]s no clear and objective way to determine when moving a victim is 'incidental' to a robbery."]; compare *People v. Hoard* (2002) 103 Cal.App.4th 599, 604-607, [maj. opn. of McKinster, J.] with *id*., at pp. 609-614 [conc. & dis. opn. of Ramirez, J.].)

[3]    Originally, as a matter of judicial construction of Penal Code section 209, the movement had to "substantially increase the risk of harm" to the victim.  (*People v. Daniels*, *supra*, 71 Cal.2d 1119, 1139.)  Effective January 1, 1998, the Legislature amended Penal Code section 209 so as to require only that the movement must "increase[] the risk of harm to the victim . . . ."  (Stats.1997, ch. 817, § 2, pp. 5519-5520.)

Because the Legislature omitted the word "substantially," it has been suggested that the amendment lowered the standard.  (*People v. Adams* (2018) 28 Cal.App.5th 170, 189; *People v. Robertson* (2012) 208 Cal.App.4th 965, 979-982; see *People v. Vines*,

"These two [prongs] are not mutually exclusive but are interrelated.  [Citations.]"

(*People v. Vines*, *supra*, 51 Cal.4th at p. 870.)

"'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence — that is, evidence that is reasonable, credible, and of solid value — from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'  [Citation.]  In so doing, a reviewing court 'presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.'  [Citation.]"  (*People v. Powell* (2018) 5 Cal.5th 921, 944.)

Our Supreme Court has stated:  "[W]hen in the course of a robbery a defendant does no more than move his victim around inside the premises in which he finds him —

_____

supra, 51 Cal.4th at p. 870, fn. 20 [dictum]; *People v. Martinez* (1999) 20 Cal.4th 225, 232, fn. 4 [dictum], overruled on unrelated grounds in *People v. Fontenot* (2019) 8 Cal.5th 57, 70; see also *People v. Hoard*, *supra*, 103 Cal.App.4th 599, 615 [conc. & dis. opn. of Ramirez, J.].)  The legislative history, however, indicates that no substantive change was intended.  (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 59 (1997-1998 Reg. Sess.) as amended Mar. 10, 1997, pp. 1, 3-4.)  Moreover, the Supreme Court has continued to say that the movement must "substantially" increase the risk of harm.  (*People v. Hardy*, *supra*, 5 Cal.5th at p. 100 [crime committed in December 1998, see *id*. at p. 63].)

We believe that a movement that insubstantially increases the risk of harm does not satisfy the statute.  This is an application of the general rule that de minimis non curat lex.  (See *People v. Caldwell* (1984) 36 Cal.3d 210, 220-221.)  It would be absurd to have a defendant's liability to a life term (Pen. Code, § 209, subd. (a)), rather than a maximum of only eight years (Pen. Code, § 208, subd. (a)), turn on whether the defendant caused an *insubstantial* increase in the risk of harm.  (See *People v. Nguyen* (2000) 22 Cal.4th 872, 877-878 [1997 amendment merely made the *Daniels* requirements "explicit"].)

7

whether it be a residence, as here, or a place of business or other enclosure — his conduct generally will not be deemed to constitute the offense proscribed by section 209." (*People v. Daniels*, *supra*, 71 Cal.2d at p. 1140.)  Later, it qualified this by saying:  "[W]e eschew a rigid 'indoor-outdoor' rule of thumb. . . .  [T]here may be circumstances in which a robber can properly be convicted of kidnaping even though he does not take his victim outside the premises in question."  (*People v. Timmons* (1971) 4 Cal.3d 411, 415.) Nevertheless, whether the victim was moved around only inside the premises remains significant.  (*People v. James* (2007) 148 Cal.App.4th 446, 456 [citing cases].)

The Supreme Court has also said:  "In the present case, . . . defendants had no interest in forcing their victims to move just for the sake of moving; their intent was to commit robberies and rapes, and the brief movements which they compelled their victims to perform were solely to facilitate such crimes.  It follows, a fortiori, that those movements were 'incidental to' the robberies and rapes . . . ."  (*People v. Daniels*, *supra*, 71 Cal.2d at pp. 1130-1131.)  Again, later, it qualified this, stating:  "Brief movements to facilitate either robbery or . . . rape are incidental thereto . . . .  [Citations.]  On the other hand movements to facilitate the foregoing crime or crimes that are for a substantial distance rather than brief are not incidental thereto . . . .  [Citations.]"  (*In re Earley* (1975) 14 Cal.3d 122, 129-130.)  However, whether the movement was intended to facilitate the intended crime is still significant.  (See *People v. Leavel* (2012) 203 Cal.App.4th 823, 835 [citing cases].)

In this case, the actual distance of the movement was minimal. Photos show that the bathroom was immediately next to the minor's bedroom, and his bedroom was small to average-sized. Pulling the victim inside cannot have moved her more than about four feet. In addition, there was no apparent reason to pull the victim into the bedroom other than to commit the sex offenses. This combination of (1) the brevity of the movement and (2) the lack of any evidence of any intent to "force[] the[] victim[] to move just for the sake of moving" requires us to conclude that the movement of the victim was merely incidental to the sex offenses.

The People argue that the movement increased the risk of harm to the victim. However, the "not merely incidental" prong and the "increased risk of harm" prong of the test, while interrelated, are conjunctive — both must be present. (*In re Earley*, *supra*, 14 Cal.3d at pp. 127-128.) Once we conclude that the movement was merely incidental, we are not required to consider whether it also increased the risk of harm.

Separately and alternatively, however, the movement here did not increase the risk of harm within the meaning of *Daniels*.

"'[T]he "risk of harm" factor refers to the risk created by the victim's movements that he will "suffer significant physical injuries over and above those to which a victim of the underlying crime is normally exposed"; it does not refer to the increased risk that the crime . . . will be committed. [Citation.]' [Citation.]" (*In re Earley*, *supra*, 14 Cal.3d at p. 131.) *People v. Nguyen*, *supra*, 22 Cal.4th 872 extended this rule (see *id*. at p. 878) to

an increased "risk of psychological trauma" (*id*. at p. 886; see also *id*. at pp. 874, 885-886) but it still does not refer to the increased risk that the crime will be committed.

Pulling the victim into the bedroom arguably increased the risk that the minor would successfully complete the sex offenses, but only slightly, if at all. During the first relevant offense, he left the door halfway open. During the second relevant offense, there is simply no evidence as to whether the door was open or closed. In any event, the minor's sister testified that, while babysitting, she was usually downstairs; she checked on K.H. only about every 30 minutes, and usually only by calling out to her.[4] Thus, defendant could have committed a lewd act or oral copulation successfully in the hall.

But more important, the question is not whether he increased the risk that he would commit a sex offense, but whether he increased the risk of harm *over and above the risk inherent in the sex offense itself*. He threatened the victim with a gun, but he could have done that in the hall as well as in the bedroom.[5] Actually firing a shot in the bedroom would have alerted his sister just as much as firing a shot in the hall. There was no evidence that he threatened to hit or beat the victim, or that she was afraid he would do so. And while the sex offenses were surely psychologically traumatizing, they would have been just as traumatizing in the hall.

---

[4] K.H. testified that, when the sex offenses occurred, the sister was usually in her room, with the door closed. In this scenario, too, it did not matter whether defendant committed the offense in the hall or in the bedroom.

[5] At oral argument, the People asserted that pulling the victim into the bedroom gave the minor access to his gun. However, the evidence does not show where he got it from or whether he already had it in his hand.

10

A relatively recent case, *People v. Williams* (2017) 7 Cal.App.5th 644, supports our view. There, the defendants committed "a series of robberies targeting retail electronics stores." (*Id*. at p. 652.) "The evidence [of] each of the five counts . . . of aggravated kidnapping show[ed] movement of the employee victims distances of 60, 50, and 40 feet, always inside the store, from locations closer to the front of the store (and visible from outside) to the rears of the store or to back rooms, where the merchandise and/or cash was kept." (*Id*. at p. 669.)

The court held that this was insufficient evidence of the necessary asportation: "[T]hese movements were incidental to the robberies . . . . None of the movements was unnecessary to the robbery. [Citation.]" (*People v. Williams*, *supra*, 7 Cal.App.5th at p. 669.) "'[R]obbery of a business owner or employee includes the risk of movement of the victim to the location of the valuables owned by the business that are held on the business premises. . . . .' [Citation.]" (*Ibid*.)

It rejected the argument "that the backs of the stores were 'shielded from view,' and thus the movements from 'a relatively safe public sales area' put the victims at an increased risk of harm." (*People v. Williams*, *supra*, 7 Cal.App.5th at p. 669.) It reasoned that the movements "' . . . served only to facilitate the crime with no other apparent purpose.' [Citation.]" (*Ibid*.) "[T]he robbers had good reason to move the victims to the back of the store to achieve their objective of emptying the cages and safes of merchandise without detection by customers or other people outside the store. Their objective was robbery, not harm to the store employees . . . ." (*Id*. at p. 670.)

Here, the movement was much shorter and equally incidental to the sex offenses. If a bed is nearby, a sex offense includes the risk of being moved to it. Defendant had good reason to move the victim inside his bedroom, solely to achieve his sexual objective. Conversely, there is no evidence that he had any intent to otherwise harm the victim.

The People rely on *People v. Shadden* (2001) 93 Cal.App.4th 164. There, the defendant dragged the owner of a video store from the front counter into a back room and closed the door, then punched her repeatedly while trying to rape her. (*Id.* at p. 167.) The court held that this was sufficient asportation. (*Id.* at pp. 168-170.) It explained, in part, "[W]here a defendant moves a victim from a public area to a place out of public view, the risk of harm is increased even if the distance is short. [Citations.]" (*Id.* at p. 169.)

*Shadden* is distinguishable because there, the defendant intended to harm the victim, above and beyond the sex offense, by beating her. Moreover, here the victim was inside the house and out of *public* view at all times. She was not even in the private view of defendant's sister (although defendant did move her a few feet farther out of view).

More fundamentally, however, *Shadden* misstated the law. Our Supreme Court has held that "acts of removing the victim from public view do not in themselves substantially increase the risk of harm . . . ." (*In re Crumpton* (1973) 9 Cal.3d 463, 467; accord, *People v. Hoard*, *supra*, 103 Cal.App.4th at p. 607.)

12

We therefore conclude that there was insufficient evidence that the movement of the victim (1) was not merely incidental to the sex offense or that it (2) increased the risk of harm to the victim.

## III

## COMMITMENT TO DJF

The People contend that the trial court erred by ruling that the minor was ineligible for placement at DJF. Although we are remanding for a new dispositional hearing, we address this contention for the guidance of the juvenile court.

A. *Additional Procedural Background.*

1. *The burglary: committed later, adjudicated earlier.*

On December 11, 2015, the minor burglarized a home. The People filed a subsequent petition[6] alleging first degree burglary. (Pen. Code, §§ 459, 460, subd. (a).) On December 15, 2015, minor admitted the allegation. He was placed first at Inland Empire Youth Homes and later at Orange County Mentors for Youth.

2. *The sex offenses.*

In December 2016, the People filed the present subsequent petition alleging kidnapping for the purpose of a sex offense (Pen. Code, § 209, subd. (b)), forcible oral copulation (Pen. Code, § 288a, subd. (c)(2)(B)), and two counts of forcible sodomy (Pen.

---

[6] The minor had previous adjudications, under the same case number, for possession of less than an ounce of marijuana at school (Health & Saf. Code, former § 11357, subd. (e)), possession of tobacco or smoking paraphernalia (Pen. Code, former § 308, subd. (b)), and second degree burglary (Pen. Code, § 459).

Code, § 286, subd. (c)(2)(B)).  These crimes were all allegedly committed between February 25, 2014 and October 31, 2015 — i.e., before the burglary.

In March 2018, the juvenile court held a combined jurisdictional hearing and violation of probation hearing.  It found one count of forcible sodomy untrue; however, it found the other three counts true.

In April 2018, the juvenile court committed the minor to the DJF.  In May 2018, the DJF rejected the commitment, because the minor's most recent offense was the burglary, which was not a qualifying offense under Welfare and Institutions Code section 733, subdivision (c) (section 733(c)).

The People asked the juvenile court to override the DJF's determination and to recommit the minor to DJF.  They asserted that, when they filed the burglary petition, they were unaware of the earlier sex offenses (which the victim had not then disclosed).  In June 2018, the juvenile court denied the People's request; thus, it modified its disposition by committing the minor to the Riverside County Youth Treatment and Education Center (YTEC).

B.     *Mootness*.

The People state that, because the minor "has already been placed in another placement facility," "[a]n argument could be made" that their appeal is moot.  The minor "agrees that the underlying case, if not already moot, will likely become moot before the appellate process is complete."

14

The People argue that we should entertain their appeal regardless, because it comes under the exception to dismissal for a case that raises an important issue that is capable of repetition, yet likely to evade review. (See, e.g., *In re Lemanuel C.* (2007) 41 Cal.4th 33, 38.)

The parties' claims of mootness are not cited to the record. The People do not explain in what "other placement facility" the minor has been placed or why. It would seem that, if it is any placement other than a commitment to DJF, their appeal still presents a live issue. Neither side seems to be claiming that the wardship has been terminated because the minor has "aged out," or for any other reason. The minor is presently 20 years old. The juvenile court can retain jurisdiction over him at least until he is 21 (Welf. & Inst. Code, § 607, subd. (a)), and arguably until he is 25. (Welf. & Inst. Code, § 607, subd. (b).)

We conclude that, on this record, the People's appeal is not moot. Accordingly, we need not decide whether the exception applies.

C. *Legal Background*.

Section 733(c) provides that a minor can be committed to DJF only if his or her "most recent offense alleged in any petition and admitted or found to be true by the court" is either (1) a serious or violent offense, as listed in Welfare and Institutions Code section 707, subdivision (b), or (2) a sex offense requiring registration, as listed in Penal Code section 290.008, subdivision (c).

In *In re D.B.* (2014) 58 Cal.4th 941, the Supreme Court held that this section means what it says: Even a minor who has committed a qualifying offense cannot be committed to DJF if his or her most recent offense is nonqualifying. (*Id*. at p. 944.) The court explained "that the language of section 733(c) is clear and lends itself to only one reasonable interpretation." (*Id*. at p. 947.)

It conceded that its interpretation had "troubling" consequences: "When the court finds that a minor has committed a series of crimes, the court's ability to impose a DJF commitment depends entirely on the type of offense the minor happened to commit last. . . . Premising DJF eligibility on the nature of the most recently committed offense could thus reward a minor for committing *more* crimes.

"In addition, because section 733(c) examines only the last offense committed, the statute will sometimes require that currently violent offenders and sex offenders be placed in local settings with juveniles whose offenses are far less serious." (*In re D.B.*, *supra*, 58 Cal.4th at pp. 947-948.)

It concluded, however: "These potential consequences . . . are not so *absurd* that we must override the plain meaning of the statutory language. To justify departing from a literal reading of a clearly worded statute, the results produced must be so unreasonable the Legislature could not have intended them. [Citation.] We cannot so conclude here. Section 733(c) was enacted as part of comprehensive realignment legislation. [Citation.] The Legislature's primary purpose in enacting the statute was to reduce the number of juvenile offenders housed in state facilities by shifting responsibility to the county level

16

"'for all but the most serious youth offenders.'" [Citations.] Although reasonable minds may debate the wisdom of the chosen approach, decisions about how to limit DJF commitments are the Legislature's to make.

"Moreover, the difficulties the People identify can be avoided if care is taken in charging and adjudicating juvenile offenses. Prosecutors may elect not to allege nonqualifying offenses when their presence would affect a minor's DJF eligibility. Prosecutors can also dismiss nonqualifying offenses before a jurisdictional finding or as part of plea negotiations." (*In re D.B.*, *supra*, 58 Cal.4th at p. 948.)

D.    *Discussion*.

Here, the minor committed the sex offenses between 2014 and October 2015; he committed the burglary in December 2015. Thus, even though the burglary was adjudicated before the sex offenses, it was his "most recent offense." And burglary is not listed in either Welfare and Institutions Code section 707, subdivision (b), or Penal Code section 290.008, subdivision (c).

The People contend that the "most recent offense" rule of *In re D.B.* should not apply when, as here, the prosecution was unaware of a minor's earlier offense when it charged the later offense.[7] They point to the statement in *In re D.B.* that prosecutors have

---

**7**    The People also contend that *In re D.B.* should not apply if an investigation of the earlier offense is "ongoing and incomplete" when the later offense is charged. (Capitalization altered.) This contention hypothesizes a situation that did not actually occur in this case. Thus, we express no opinion on it.

ways to avoid the more troubling consequences of section 733(c). They conclude that, because they were unable to do so, they should be exempt from the rule.

We begin with a truism: "Courts exercising inferior jurisdiction must accept the law declared by courts of superior jurisdiction. It is not their function to attempt to overrule decisions of a higher court. [Citations.]" (*Auto Equity Sales, Inc. v. Superior Court of Santa Clara County* (1962) 57 Cal.2d 450, 455.)

Admittedly, *In re D.B.* did not deal with the precise situation presented here. (See *In re D.B.*, *supra*, 58 Cal.4th at p. 945.) And we recognize that "'a decision is not authority for propositions not considered.' [Citation.]" (*People v. Ghobrial* (2018) 5 Cal.5th 250, 285.) Nevertheless, the reasoning that the Supreme Court brought to bear in *In re D.B.* leaves no room for a different outcome in this case.

The Supreme Court viewed the issue before it as "a straightforward question of statutory interpretation . . . ." (*In re D.B.*, *supra*, 58 Cal.4th at p. 945.) It concluded that "the language of section 733(c) is clear and lends itself to only one reasonable interpretation." (*Id.* at p. 947.)

We fail to see how the statute could mean something different in this case. A juvenile's "most recent offense" does not somehow go back in time just because the prosecution did not know about it. This is all the more true because section 733(c) does not look at the "most recent offense" in the abstract; rather, it looks specifically at "the most recent offense *alleged in any petition and admitted or found to be true by the cour*t . . . ." (Italics added.) Thus, by the time section 733(c) kicks in, i.e., at disposition, the

18

prosecution *does* know about the juvenile's most recent offense. The statute itself makes it irrelevant that the prosecution did not know about that offense sooner.

Moreover, the Supreme Court did not assume that the prosecution can *always* avoid troubling results. To the contrary, it acknowledged that troubling results will occur, but it concluded that they did not justify overriding the plain meaning of the statutory language — *in part*, because prosecutors can avoid those results in *some* cases. Moreover, it also reasoned that the Legislature evidently chose to tolerate those results in order to achieve its "primary purpose" of reducing the number of juvenile offenders housed in state facilities.

We therefore conclude that the juvenile court properly found that the minor was ineligible for a commitment to DJF.

IV

DISPOSITION

The juvenile court's true finding on the aggravated kidnapping allegation is reversed. The dispositional order is vacated, and the matter is remanded for a new

dispositional hearing.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

CODRINGTON
J.

RAPHAEL
J.

20